LOUISVILLE & NASHVILLE RAILROAD COMPANY ET AL. *v.*
MILLER ET AL.

[No. 27,573.   Filed December 29, 1941.   Rehearing denied
January 21, 1942.]

*Craig & Craig,* of Evansville (*W. A. Endle,* of Cleveland, Ohio, of counsel), for appellants.

*Elmer Q. Lockyear, Charles J. Eichel,* and *Theodore Lockyear,* all of Evansville, for appellees.

FANSLER, J.—This is a controversy between members of the Brotherhood of Railroad Trainmen. The railroad companies have no interest in the result. The appellees began the action on behalf of themselves and all other switchmen and yardmen employed by the Louisville and Nashville Railroad Company in Vander-

burgh County, Indiana. The purpose of the suit is to prevent the employment of certain members of the brotherhood in the switching yards operated by the Louisville and Nashville Railroad Company in Vanderburgh County. There was a permanent injunction in favor of the plaintiffs.

The only error assigned upon appeal is the overruling of a motion for a new trial upon the grounds that the decision of the court is not sustained by sufficient evidence, that the decision of the court is contrary to law, and that certain evidence was improperly admitted.

If there was error in the admission of evidence it cannot be seen that it prejudiced the rights of the appellants.

The controlling facts are not in dispute. Both railroad companies have contracts with the Brotherhood of Railroad Trainmen providing for seniority rights for employees. By the terms of this agreement, members of the brotherhood employed by the Louisville and Nashville Railroad Company were entitled to seniority rights in the Louisville and Nashville Railroad Company yards, and members of the brotherhood employed by the Chicago and Eastern Illinois Railway Company were entitled to seniority rights in the yards of that company. Both railroad companies operate trains into the City of Evansville. Prior to 1935 both railroad companies maintained depots. Some of the Chicago and Eastern Illinois Railway Company trains ended their run at Evansville and returned north, while others were through trains which continued south from Evansville on the Louisville and Nashville Railroad. Prior to 1935, the Chicago and Eastern Illinois switching of these trains was conducted in its own yards. In 1935 the Chicago and Eastern Illinois Railway Company depot was closed and all the trains were run into the Louis-

ville and Nashville Railroad Company depot, and all train switching was thereafter done in the Louisville and Nashville Railroad Company switching yards.

The Louisville and Nashville yardmen claimed the privilege of doing all of the switching in the Louisville and Nashville yards by reason of their claim of exclusive seniority privileges under the brotherhood contract with the railroad company. The Chicago and Eastern Illinois yardmen claimed the right to do a certain part of the switching upon the theory that there had been a "merger" within the meaning of article "G" of the Declaration of Policy of the Brotherhood of Railroad Trainmen, and that their seniority rights were protected, and that they were entitled to participate in the switching of the merged operation. This controversy was submitted to the general chairman of the brotherhood for each railroad system, who were unable to agree, and the matter was, under the rules of the brotherhood, referred to the president of the brotherhood, who sustained the contention of the Chicago and Eastern Illinois yardmen. Thereupon the Louisville and Nashville yardmen appealed from the decision of the president to the board of appeals of the brotherhood. The board of appeals reversed the decision of the president, sustaining the contention of the Louisville and Nashville yardmen. At the next meeting of the grand lodge, the supreme power in the brotherhood, the decision of the board of appeals was reversed, and a decision made in favor of the Chicago and Eastern Illinois yardmen.

The case as presented to the court below and to this court depends for its solution entirely upon an interpretation and construction of the constitution and laws of the union respecting the jurisdiction of various union agencies to decide the questions presented by the con-

troversy and the finality of these decisions. It is contended by the appellants that the controversy submitted to the president of the brotherhood required nothing more than an interpretation of the laws of the brotherhood; that the sole power to interpret the laws is vested in the president, subject only to an appeal to the board of directors and then to the grand lodge, and that therefore the board of appeals, to which an appeal was taken from the president's order, had no power or jurisdiction to intervene. The appellees contend that the controversy involved a question of fact to be decided by the president; that the appeal from his decision was therefore properly taken to the board of appeals; that by the provisions of the constitution of the brotherhood, the decision of the board of appeals is final. But the appellants contend that, even though the appeal was properly taken to the board of appeals, section 6 of the constitution of the brotherhood provides: "The Grand Lodge has exclusive jurisdiction over all subjects pertaining to the Brotherhood, and its enactments and decisions upon all questions are the supreme law of the Brotherhood. The Grand Lodge may hear and determine all matters of controversy which may be brought before it by appeal or otherwise. . . ." The appellees contend that this provision is nullified, in so far as controversies are concerned, by the constitutional provisions later adopted providing for decisions by the board of appeals, and that they shall be final. There is no allegation or evidence of fraud, oppression, or bad faith.

The controversy involves nothing more or less than a construction of the constitution and laws of the brotherhood and a determination of the jurisdiction of the board of directors, the board of appeals, and the grand lodge. The appellees contend that seniority rights are property rights, and

that courts will interfere in the activities of voluntary associations in order to protect property rights. The seniority rights arose out of, and by virtue of, an agreement between the brotherhood and the railroad company. Whatever seniority the appellees enjoy vests in them by virtue of their having become members of the brotherhood. The rights are granted to them as members subject to the condition that they comply with the rules of the brotherhood, and that the right to seniority as between the members of the brotherhood shall be determined under the laws of the brotherhood. See *Shaup* v. *Grand International B. of L. Engineers et al.* (1931), 223 Ala. 202, 135 So. 327.

In *Simpson* v. *Grand International B. of L. Engineers* (1919), 83 W. Va. 355, 373, 98 S. E. 580, 587, it is said: ". . . the construction of the organic agreement, ■ by-laws, rules and regulations of a benefit society or other unincorporated voluntary association belongs, not to the court, but to the board, council or other tribunal provided for the purpose in the organization, if any. So long as the body upon which this power of interpretation has been conferred does not substitute legislation for interpretation, nor transgress the bounds of reason, common sense or fairness, nor contravene public policy or the laws of the land, in their conclusions and decisions, the court cannot interfere with them." And it was said by the same court in *State ex rel. Smith* v. *County Court* (1916), 78 W. Va. 168, 172, 88 S. E. 662, 664, 20 A. L. R. 1030, 1033: "The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as is the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. On the contrary, the presumption is in favor

of it.  In connecting himself with the organization, a member subjects himself as fully and completely to the power of administration, within legal limits, as to the power of legislation or prescription.  To say courts can make rules and regulations for such associations would be absurd and ridiculous.  To say they may interpret and apply them, in view of the powers reserved to, and exercised by, the governing bodies of the association, would be as plainly subversive of contractual right." These cases and many others are discussed and cited in *Shaup* v. *Grand International B. of L. Engineers et al.,* *supra.*

In *Harris* v. *Missouri Pac. R. Co. et al.* (1931), 1 Fed. Supp. 946, 949, 950, the court said, after reviewing the facts and the contentions of the parties and the principles involved, which were substantially like those in the case under consideration:  "The organization, by its constitution and by-laws, had constituted officers and tribunals to pass upon these questions of order and procedure, and they were duly passed upon by such duly constituted officers and tribunals. These were strictly questions of interpretation and construction of the constitution and by-laws of the union. That the courts will not review the correctness of the interpretation fairly placed upon the constitution and by-laws of a voluntary association by its duly authorized tribunals, particularly where only a procedural or jurisdictional question is involved, seems to be the settled rule."  The authorities cited and those we have referred to support the conclusion in which we must concur.

Judgment reversed, with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 38 N. E. (2d) 239.