**TEXAS & P. RY. CO. et al. v. BROTHERHOOD OF RAILROAD TRAINMEN et al.**

No. 1308.

District Court, W. D. Louisiana, Alexandria Division.

Dec. 11, 1945.

M. E. Clinton, of Dallas, Tex., Esmond Phelps, of New Orleans, La., Fred G. Hudson, Jr., of Monroe, La., H. Payne Breazeale, of Baton Rouge, La., and Frank H. Peterman, of Alexandria, La., for plaintiffs.

Kemble K. Kennedy, of Baton Rouge, La., for defendants Brotherhood of Railroad Trainmen and Rapides Lodge No. 856 of the Brotherhood of Railroad Trainmen.

Fred G. Benton, of Baton Rouge, La., and C. Ory Dupont, of Plaquemine, La., for

individual defendants, who are employees of Texas & Pacific Ry. Co.

### PORTERIE, District Judge.

Motions filed by the two defendants to dismiss this action for declaratory judgment sought by the two plaintiff railroads were considered and overruled at 60 F.Supp. 263.

The facts determined in that former opinion are to be taken and now placed in the case on the merits.

Taking these facts as a premise, and with the legal principles established from these facts in the opinion dismissing the motions, we determine and declare that in the trial on the merits of the case the main questions for us to decide are:

(a) Whether the decision by the joint executives of the three brotherhoods was legal and proper; and

(b) Whether or not the Board of Appeals of the Brotherhood of Railroad Trainmen had anything to do with the issue under the Constitution of the Brotherhood of Railroad Trainmen; and

(c) Underlying the general query, if it be found that the action of the Board of Appeals was valid, if the seniority rights of the individual Texas & Pacific laborers were constitutional rights guaranteed to them under the Fifth or the Fourteenth Amendments, whether these particular defendants should prevail notwithstanding.

Before proceeding to answer the three self-imposed queries above, (a), (b), and (c), we should have a preliminary general discussion.

■ The general rule is that our Courts should not interfere with such a controversy as here, if it involves nothing more than a construction of the constitution and laws of the Brotherhood, and the determination of the jurisdiction of the Board of Directors, the Board of Appeals, and the Grand Lodge. Louisville & Nashville Railroad Company et al. v. Miller et al., 219 Ind. 389, 38 N.E.2d 239, 142 A.L.R. 1050.

Further, it follows, however, that, quoting from 142 A.L.R. 1067, Limitations on General Rule: "As the converse of the general rule that courts will not interfere with decisions made in good faith by appropriate union tribunals acting within the scope of their jurisdiction and power in settling controversies within the union over seniority rights arising out of the union's collective bargaining contract and its constitution, rules and bylaws, it would seem to follow that courts will protect a union member's seniority rights, so arising, against action by the union which is arbitrary, fraudulent, illegal, or in excess of the union's powers or those of the officers or tribunals through which it acts. So, a union member is entitled to judicial relief from the union's attempt to deprive him without authority of a personal or individual seniority privilege secured by contract with the employer. Piercy v. Louisville & N. R. Co., 1923, 198 Ky. 477, 248 S.W. 1042, 33 A.L.R. 322. Similarly, the seniority rights secured to members of a brotherhood by its rules and its contract with a railroad will be respected and protected by the courts against prejudicial change by a tribunal of the brotherhood acting in excess of powers conferred upon it by the brotherhood's constitution. Gleason v. Thomas, 117 W.Va. 550, 186 S.E. 304. And it has been said that seniority rights, when recognized and guaranteed by contracts between the employer and a union, inure to the benefit of individual employees, so that the employee may invoke the equity jurisdiction of courts if full resort to the union tribunals has proved unavailing because of unreasonable construction of union laws or want of good faith on the part of its officers. Lockwood v. Chitwood, 185 Okl. 44, 89 P.2d 951."

■ There is the general rule, too, that courts are without jurisdiction in disputes as to seniority rights when the remedies within the union have not been exhausted. This rule is inapplicable here, for no appeal has been taken to the proper channels within the union—what has been done is that an appeal was taken to the improper tribunal. Remedy within the union has been exhausted.

Moreover, in this case the Court is confronted with the request by the railroad carriers for a declaratory judgment which, as we have shown with reasons in our former opinion referred to above, they are entitled to have, even though the remedies within the brotherhood have not been exhausted.

A fortiori, however, are they entitled to an answer, since we are going to hold in this opinion that the Board of Appeals was absolutely without jurisdiction, and its action, consequently, was null and void. The action of the three executives of the brotherhoods maintaining the original contract of June 2, 1927, is final, though subject to appeal to the directors or to the convention of the

Brotherhood of Railroad Trainmen—the latter provision for an appeal being not important since it has not been taken. Additionally the limitations of time have run and the appeal is precluded.

We shall now proceed to answer what we posed in (a), (b), and (c).

■ (a) The decision by the joint executives of the three brotherhoods is empowered by Section 86, Interpretation of Laws, which is found under the main division "Grand Lodge" of the constitution, in part reading as follows: "The provisions of this Constitution shall be interpreted and construed according to their most plain and obvious meaning, and should any doubt arise as to the proper construction of any section or rule thereof it shall be referred to the President of the Brotherhood, whose decision shall be final, unless reversed by the Board of Directors or by the Grand Lodge."

This shows that in the procedure of the Board of Appeals, immediately upon the showing of a cause of law or policy of the brotherhood, the Board of Appeals, since it is without jurisdiction in such a matter, must immediately refer the matter to the president of the Brotherhood. So, clearly, the decision of the joint executives is legal and proper.

■ (b) An examination of the constitution of the Brotherhood of Railroad Trainmen (the latest), the fruit of the Second Quadrennial Convention held at Cleveland, Ohio, 1939, shows that under the primary heading of "Grand Lodge", under section 15-a, a Board of Appeals is created "to which shall be referred all appeals arising under General Rule No. 10 and Section 149 of the Constitution of the Brotherhood," and under section 15-b, "the duty of the Board of Appeals" is "to consider and determine all appeals arising under General Rule No. 10 and Section 149 of the Constitution of the Brotherhood."

Now the important question is to find out what are the provisions of section 149 and rule No. 10.

The crux of section 149 is contained in its first part: "An officer or member believing that an injustice has been done him in a trial, or in case of removal from office, or a decision of his lodge or by any action of the Legislative Board, may appeal from such action to the President of the Brotherhood in the following manner:"

Then (without quoting the exact language) it is further provided that from the president of the Brotherhood an appeal may go to the Board of Directors, and if that be not satisfactory, an appeal may then be taken to the Board of Appeals.

The important point to note is that section 149 is found in one of the few main divisions of the constitution, the one entitled "Subordinate Lodges." By context with sections 142–148, both inclusive, it is evident that the portent of section 149 is purely to provide trials of any member in the violation of "the duties of membership, or any of the principles of the Brotherhood" (quoting from section 142), and, also, to provide for the consequent manner of trial, the penalties upon conviction, the reprimands, etc. In other words, it provides for that which is purely personal to a member of the Brotherhood—but clearly for nothing which has to do with the establishment of the general law and policy of the Brotherhood.

Now, to make sure of the significance of rule No. 10, we quote it in full: "Whatever action may be taken by the general grievance committee or board of adjustment of any system within the meaning of the above General Rules shall be law to the lodges on that road or bus line until and unless reversed by the Board of Appeals, and if any member refuses to vote or abide by the action of such general grievance committee or board of adjustment he shall be expelled from the Brotherhood for violation of obligation. Any member believing an injustice has been done him by the action of a sub-general grievance committee or board of adjustment may, if he desires, appeal to the full general committee or board of adjustment within ninety (90) days from date of decision rendered, or he may appeal to the Board of Appeals within sixty (60) days from receipt of notice of such decision. In the event he decides to appeal his case to the full general committee or board of adjustment and then is not satisfied with such decision he may appeal to the Board of Appeals providing such appeal is filed within sixty (60) days after notice of decision is rendered, or in case the general committee has not had a meeting at which action has been taken on an appeal, and such appeal is still pending a hearing by the full committee, if the appellant, or lodge from which the grievance emanated, so requests, it shall be the duty of the secretary of the general grievance committee or board of adjustment, to refer the same to the Board of Appeals at least thirty (30) days before the convening of such board. In the event of

a strike, the President of the Brotherhood shall be the recognized leader, and in conjunction with the General Secretary and Treasurer, and after having received the approval of the Board of Trustees, shall have authority to appropriate from the Protective Fund of the Brotherhood, such moneys for legal advice and incidental expenses as in their judgment may be required for a successful prosecution of the strike. The President and general grievance committee or board of adjustment have the authority to terminate a strike or to discontinue any or all strike benefits, but in the event of a difference of opinion as to the termination of a strike or the discontinuance of strike benefits, and upon application of either party, it shall be the duty of the Board of Trustees immediately to meet jointly or separately with the President and general grievance committee or board of adjustment and decide the question, and the decision of the Board of Trustees shall be final and binding."

It is obvious that the issue we have to decide in this case does not come under rule No. 10. So, it is our view that the Board of Appeals of the Brotherhood had no authority to act in this case. They did act, however. See the Report of the Board of Appeals, October, 1943, Brotherhood of Railroad Trainmen, page 5F—232, Case No. 1665, File O—6011—A.

The decision of the three Grand Lodge officers of the Brotherhood of Locomotive Engineers, of Locomotive Firemen and Engineers, and Brotherhood of Railroad Trainmen, on July 29, 1943, said: "In the belief that the record supports claim that the Agreement of June 2, effective June 20, 1927, was a permanent settlement, and that a 10%, etc., fluctuation, increase or decrease in business as indicated in our report and recommendation of April 25, 1943, does not constitute a change in conditions under the law and policy of our organization, we recommend no change be made in the Agreement of June 2, effective June 20, 1927, now in effect governing the assignment of yard and hostler service in the Missouri Pacific and Texas-Pacific terminal or yard at Alexandria, Louisiana."

The body of the decision of the Board of Appeals proves its own want of jurisdiction, under the constitution of the Brotherhood, quoting at page 232: "Effective July 20, 1927, an agreement was entered into by representatives of the B. of L. E., B. of L. F. & E. and B. of R. T., Missouri Pacific and T. & P. Railways, covering manning of yard and hostler service in the Alexandria terminal. In May, 1940, general chairmen of the three organizations on the Missouri Pacific Railway submitted a joint request to the three chief executives, requesting that Grand Lodge officers be assigned to give consideration to modification of the 1927 agreement on the basis of changed conditions. Officers were assigned, Vice President C. H. Smith representing the Brotherhood, and on April 26, 1943, they submitted a detailed report to the chief executives, which report included the following 'summary of evidence':" and in that summary of the evidence, after declaring the increased percentage in cars handled by the Missouri Pacific over the Texas & Pacific in the years 1940, 1941, and seven months of 1942, and establishing eight findings of fact, the report to the three chief executives concluded with the statement, at page 233: "This case, therefore, in our judgment, involves an interpretation of the law and policy of the respective organizations as to what constitutes a change in conditions that would warrant a change in said agreement."

And then on July 9, 1943, the three chief executives wrote to the three grand lodge officers that "no change be made in the agreement of June 2, effective June 20, 1927." A decision was formally pronounced on July 29, 1943—as previously quoted.

From this status it is our opinion that the Board of Appeals of the Brotherhood of Railroad Trainmen was not empowered by the constitution to hear anything about this issue. There might have been a further hearing by the directors, or a hearing before the convention of the Brotherhood of Railroad Trainmen, but such action has not been taken; we believe the time to take same has expired, or, even if that be not true, this Court has the authority to answer the question posed to it by the railroad carriers under their action for a declaratory judgment, even though the remedies within the Brotherhood have not yet been fully exhausted.

The joint decrees of the executives and the president have decided the issue favorably to the Texas & Pacific employees. This is final under the law and policy of the Brotherhood, especially since the status is that no appeal has been prosecuted, either to the directors or to the convention.

An examination of the constitution, supra, at page 214, will show an extended treatment under the heading, "Declaration of Policy of the Brotherhood of Railroad Trainmen in relation to seniority rights of train and yardmen on lines of railway or portions thereof where mergers are made effective." It is evident there is consideration of seniority rights as a serious matter of law and policy.

Direct pecuniary loss would be suffered by the individual employees of the Texas & Pacific Railway Company if the contract of June 2, 1927, were to be changed, since it would deny them acquired seniority. Evidence as to this went uncontradicted.

■ Seniority rights of laboring men have been declared fundamental constitutional rights secured and protected by the Fifth Amendment to the Federal Constitution. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916 545, Ann.Cas.1917B 283; Stephenson et al. v. New Orleans & N. E. R. Co. et al., 180 Miss. 147, 177 So. 509; Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. ——.

Pretermitting the point as to whether or not the individual Texas & Pacific employees have been denied a constitutional right, it would seem to be sufficient that they have been denied a right under the constitution of the Brotherhood.

"Where, however, civil or property rights are involved, or where the action of the association is clearly illegal, judicial redress may be secured." C.J.S., Vol. 7, Associations, § 34, Judicial Interference.

Where property or civil rights are invaded, see Ward v. McMath, 153 Ark. 506, 241 S.W. 3; Elfer v. Marine Engineers Beneficial Association No. 12, 179 La. 383, 154 So. 32; Fraser v. Buck, Tex. Civ.App., 234 S.W. 679.

(c) Since we hold that the Board of Appeals had no jurisdiction, and, consequently, its action is not valid, this third of our self-imposed questions need not be answered.

■ The action of the Board of Appeals was of such an inherent nullity that the appearance before it of Mr. L. A. Aucoin, chairman of the Grievance Committee of the Texas & Pacific Railway Company, representing the individual employees of this railroad, complainants here, whether or not he raised the jurisdictional question, cannot be a waiver; those defendants are not now estopped.

The carriers' question, after all, is just what should they do with the contract of 1927. Our answer is that they should continue to enforce it; there is nothing contrary to its enforcement that has been declared or put out in any legal or valid form by the Brotherhood of Railroad Trainmen. To the contrary, the legal pronouncement by the Brotherhood of Railroad Trainmen, as well as that by the other two Brotherhoods, has been for its continuance and for the obedience to it by all contractants.

Judgment will be signed in accordance herewith, to be prepared by all parties concerned.