453 P.2d 574

The AMERICAN RAILWAY SUPERVISORS ASSOCIATION, a non-profit corporation, Plaintiff-Appellant,

v.

UNION PACIFIC LODGE NO. 145, Fred Warner and W. K. Wood, Defendants and Cross-Complainants and Respondents,

v.

The AMERICAN RAILWAY SUPERVISORS ASSOCIATION, a non-profit corporation, Cross-Defendant and Appellant.

No. 10206.

Supreme Court of Idaho.

April 29, 1969.

**926**

Gee, Hargraves & Armstrong, Pocatello, for appellant.

Johnson & Olson, Pocatello, for respondents.

DONALDSON, Justice.

The facts are stipulated. Plaintiff (appellant American Railway Supervisors Association[1] an Illinois, non-profit corporation registered and qualified as a non-profit corporation doing business in the State of Idaho) brought this action against defendants (respondents) Union Pacific Lodge No. 145[2] (a subordinate lodge of plaintiff) and Fred Warner (financial secretary-treasurer of the Lodge) and W. K. Wood

(president and general chairman of the Lodge) to recover, under art. XIV, § 9 of plaintiff's Constitution and By-Laws, certain funds in the hands of defendants.

Art. XIV, § 9 states:

"Upon *withdrawal* of a subordinate lodge from the Association or upon expulsion of a subordinate lodge from the Association all of the funds and all of the property of the subordinate lodge shall immediately vest in the Grand Lodge and the President of the Grand Lodge shall bring action to recover the same upon failure or refusal to deliver the same to the Treasurer of the Grand Lodge within ten days after the lodge has been expelled or withdraws." (emphasis added)

It is stipulated that the Constitution and By-Laws are binding on defendants.

Prior to May 5, 1964, a dispute arose as to representation of a certain class of employees of the Union Pacific Railroad Company in employer-employee relations, and a representation election was demanded. Prior to the election these employees were represented by the Lodge. An election was conducted by the National Mediation Board on May 5, 1964. 135 of 137 eligible employees voted. This election resulted in decertification of the Lodge and in certification of the "Union Pacific Maintenance Officers" as representatives of the class of employees. The results of the election were certified by the National Mediation Board on July 14, 1964, as case No. R-3635.

As of May 1, 1964, there were 42 paid-up members of the Lodge. At the time of the election, funds in the hands of defendants totaled $1,882.42. Since that time defendants have incurred legal and accounting expenses of $587.50.

Defendants "cross-claimed" for a declaraton that plaintiff had no right, title or interest in the fund and for judgment allowing them to disburse the funds among the paid-up members of the Lodge.

---

1. Hereinafter referred to as "the Association."

2. Hereinafter referred to as "the Lodge."

The stipulated facts were adopted by the district court as its findings of fact. The court ruled in its conclusions of law that decertification of the Lodge as bargaining representative did not amount to withdrawal or expulsion of the Lodge from the Association; hence art. XIV, § 9 of the Association's Constitution and By-Laws had no application. The court also refused to order distribution of the fund. The defendants were directed to hold the fund in trust to be disposed of according to the by-laws of the Lodge.

Based on the findings of fact and conclusions of law, judgment was entered denying relief on both plaintiff's and defendants' claims.

Plaintiff made objection to the findings of fact, conclusions of law, and judgment, and moved for a new trail. In this connection an affidavit of J. P. Tahney, Grand President of the Association, was filed. He stated that the Board of Directors was empowered to make a binding interpretation of the Constitution and By-Laws in case of ambiguity.[3] He went on to state that the voluntary election and decertification of the Lodge was interpreted to be a withdrawal of the Lodge from the Association.

The district court denied the motion for new trial. In so acting the court found the affidavit to be "self-serving and of no legal force or effect."

Plaintiff has appealed from the judgment. Defendants have not cross-appealed.

We recognize at the outset that many jurisdictions have enforced clauses in union constitutions or by-laws similar to art. XIV, § 9. They have acted under the traditional concept that union constitutions and by-laws are contracts, binding upon the parent, the local and the members. See, e. g., Lockridge v. Amalgamated Ass'n. of St. El. Ry. & M. C. Emp., 84 Idaho 201, 369 P.2d 1006 (1962). Courts and commentators also have attempted to avoid enforcement of such reverter clauses in particular factual situations under a multitude of theories, including failure of implied condition, frustration of purpose, trust fund, local autonomy, unclean hands and public policy. Both the contract concept and the methods advocated for avoiding its effect have met with criticism. See generally, Comment, The Property Rights of Disaffiliating Local Unions in the Light of Public Policy, XXXVII Fordham L.Rev. 252 (1968); Greenberg, Disposition of Union Assets Upon Disaffiliation, 33 Temp.L.Q. 152 (1960); Note, Disposition of Union Assets on Disaffiliation, 45 Va.L.Rev. 244 (1959); annot. 23 A.L.R.2d 1209 (1952).

As we have seen, however, the National Mediation Board conducted a representation election, resulting in decertification of the Lodge as representative of a class of employees in dealings with its employer, the Union Pacific Railroad. This action, contends the appellant, standing alone, constituted a withdrawal of the Lodge from the Association.[4] The limited facts before this court do not lead us to such a conclusion. 135 employees, only 42 of whom appear to have been members of the Lodge, voted in the election. 89 voted for the Union Pacific Maintenance Officers; 45 voted for the American Railway Supervisors Association. It is therefore evident that the members of the American Railway Supervisors Association were a minority and even if they voted as a bloc, they could not have controlled the results of the election. Certainly there was no voluntary withdrawal. Furthermore, a representation election involves disputes between employees of a specific class as to who will represent them in their relations with their employer. It does not concern the relationship between a union and its locals. 45 U.S.C. § 152. Appellant has cited no cases which support its theory.

3. Art. II, § 21, of plaintiff's Constitution and By-Laws states: "The Board of Directors shall have the power to interpret these by-laws or the certificate of organization or constitution of this Association in case of ambiguity and their interpretation is final."

4. Nothing in the record indicates that the Lodge was expelled from the Association.

The trial judge ruled as a factual matter that there had been no withdrawal of the Lodge from the Union. Error will not be presumed on appeal but must be affirmatively shown on the record by the appellant. Gardner v. Fliegel, 92 Idaho 767, 450 P.2d 990 (1969); Hammond v. Hammond, 92 Idaho 623, 448 P.2d 237 (1968). Thus, there is no reason to hold that the court erred in failing to enforce the reverter clause.

 It is also argued that the trial judge acted erroneously in denying the motion for new trial and in refusing to consider the affidavit of the grand president of the association in support of that motion. It has been said that a court usually will accept a union's interpretation of its by-laws and constitution. Louisville & N. R. Co. v. Miller, 219 Ind. 389, 38 N.E.2d 239, 142 A.L.R. 1050 (1941), cert. denied, 317 U.S. 644, 63 S.Ct. 36, 87 L.Ed. 519 (1942); Couie v. Local Union No. 1849, Etc., 51 Wash.2d 108, 316 P.2d 473 (1957). Where, however, the construction placed on the constitution or by-law is unreasonable, the court will not recognize it. Mandracio v. Bartenders Union, Local 41, 41 Cal.2d 81, 256 P.2d 927 (1953); Riviello v. Journeymen Barbers, H. & C. Inter. Union, 109 Cal.App.2d 123, 240 P.2d 361 (1952). On the record before us, the interpretation of the by-law by the Grand President of the Association or the Board of Directors[5] was inherently unreasonable. We do know, for example, that numerous people not members of the Lodge voted in the representation election. We do not know whether the Lodge represented persons other than those voting in the representation election, or whether the members of the Lodge did any act towards withdrawal from the Union. There is nothing to show that the Lodge could not have been recertified as the employees' representative at some future time. The burden of proof, of course, was on the plaintiff. See Scott v. Donahue, 93 Cal.App. 126, 269 P. 455 (1928). Nevertheless the plaintiff association elected to present to the court insufficient facts to support such a conclusion. Rather, the facts before us support the conclusion that the interpretation was unreasonable. Otherwise, everytime a subordinate lodge of the plaintiff association lost a representation election, such would amount to a withdrawal of the lodge from the association. With this construction we cannot concur. It also appears that the affidavit was not served with the motion for new trial as required by I.R.C.P. Rule 59(c). Furthermore, it has not been alleged that the facts in the affidavit constituted newly discovered evidence.

We conclude that the trial judge acted within his discretion in denying the motion for new trial.

Judgment is affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, SHEPARD and SPEAR, JJ., concur.

---

5. It is not clear from the affidavit who authored the interpretation.