**COMMUNICATIONS WORKERS OF AMERICA, LOCAL 5701, Plaintiff-Appellant,**

v.

**Darlene S. DRAKE, Defendant-Appellee.**

No. 1–585A135.

Court of Appeals of Indiana, First District.

Dec. 19, 1985.

Publication Ordered Jan. 4, 1986.

Barbara J. Baird, Fillenwarth Dennerline Groth & Baird, Indianapolis, for appellant.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Communications Workers of America, Local 5701 appeals from a decision of the Vanderburgh Superior Court Small Claims Division refusing to enforce a Union decision and fine imposed upon Darlene S. Drake. We reverse.

## FACTS

From August 7, to August 27, 1983, the Communication Workers of America, Local 5701 (the Union) conducted a strike against Indiana Bell Telephone Company (Bell) in Evansville, Indiana, as part of a nationwide strike supported by the Union. Darlene S. Drake (Drake), an employee of Bell and a member of the Union for over twelve years, decided not to participate in the strike. Therefore, during the three week strike, Drake crossed the picket line and continued to work and draw pay from Bell.

As a result, a fellow union member filed a written charge against Drake alleging violation of Article XIX, Sections 1(c) and 1(e) of the Union's constitution which provides:

"Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution of any of the following acts:

. . . .

(c) Wilfully violating the Constitution of the Union, Local Bylaws or Rules;

. . . .

(e) Working without proper Union authorization, during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local."

Record 23, at 62.

Article XX of the Constitution provides the procedural framework for the filing, prosecution, and trial of internal Union charges. Record 23, at 64–71. Charges must be filed within sixty days of the alleged offense and must include a statement of the facts constituting the offense and the approximate date the offense is alleged to have occurred. Record 23, Article XX, Section 2(c), at 66. A union member is appointed as a prosecutor to investigate the complaint and determine whether there is probable cause to prosecute. Record 23, Article XX, Section 3(a)(2), at 66–67. A trial panel, or court, is selected by the governing body of the Local and is charged with the duty of rendering an unbiased, unprejudiced decision and imposing a penalty, if the accused is found guilty, based on the evidence presented. Record 23, Article XX, Section 3(a)(1), at 66. The constitution further provides that any trial shall be "held speedily with due notice to the accused." Record 23, Article XX, Section 3(a)(3), at 67. In addition, the accused has the right to select a union member as counsel, produce witnesses and evidence, and cross-examine witnesses. Record 23, Article XX, Section 3(a)(4), at 67. All witnesses must testify under oath, and a record of the proceedings is made. Notice of the panel's decision is to be given to the accused within five days after the close of trial. Record 23, Article XX, Sections 3(a), (5), (6), (7), at 67.

If a member wishes to appeal a negative decision by the union panel, he or she may appeal such decision first to a membership meeting of the Union, and then to the local executive board. Record 23, Article XX, Section 4(a)(1), (2), at 69–70. If further review is desired, outside the local union, a member may appeal to the executive board of the International Union, and finally to the next convention of the Union. Record 23, Article XX, Section 4(a)(3), (4), at 70.

On September 27, 1983, a copy of the charge was sent, via certified mail, to Drake. This notice apprised Drake of her due process rights to be heard, present evidence, cross-examine witnesses, and be represented by a fellow union member at the panel trial.

A union member, appointed as prosecutor, investigated and concluded there was sufficient probable cause to proceed to trial. Thus, on November 4, 1983, the Union sent written notice to Drake informing her of the date the trial was set for, November 17, 1983, and reiterating her procedural due process rights. This notice, received by Drake on November 5, 1983, further informed her that she had the right to request a continuance and provided the name and telephone number of the trial panel chairman should she seek a continuance.

Thereafter, the trial panel was selected by the Union and the trial was held on the appointed date. The panel consisted of five disinterested union members. Drake did not attend this trial. The trial panel found against Drake and fined her $857.77, an amount equivalent to Drake's take-home pay for the period of the strike plus $25.00 for costs incurred by the Union in prosecuting the charge. Subsequently, the trial panel notified Drake of its decision by certified mail and included an explanation of the procedure and time limitations for appealing its decision under the Union constitution. Despite the Union's efforts to collect the fine, Drake did not respond or exercise her right to file an internal Union appeal of the trial panel's decision.

The Union then filed suit alleging that Drake breached the Union constitution by failing to pay the fine. Drake appeared *pro se* and testified that she did not attend the trial panel hearing because she did not feel like going downtown at night. Drake further testified that she made no effort to contact the Union about this fear, claiming she did not know how to get in touch with anyone. On January 11, 1985, the trial court entered judgment in favor of Drake. Thereafter, the Union perfected this appeal.

## ISSUES

1. Whether a fine imposed pursuant to a labor union constitution may be enforced in the courts of Indiana.

2. Whether Drake was afforded due process by the Union in the imposition of the fine against her.

3. Whether the trial court erred in failing to enforce the Union fine imposed upon Drake.

## DISCUSSION AND DECISION

At the outset, we must note that Drake has not submitted an Appellee's Brief. Of course, the Union is appealing from a negative judgment and so it must show the trial court's judgment is contrary to law. *Dotlich v. Dotlich* (1985), Ind. App., 475 N.E.2d 331. However, since Drake did not submit a brief, the Union will prevail if it can demonstrate prima facie error on the part of the trial court. *Paxton v. Paxton* (1981), Ind.App., 420 N.E.2d 1346.

*Issue One*

Indiana recognizes that valid constitutions and by-laws of labor organizations are enforceable contracts between those organizations and their members. Indiana Code section 22-7-2-1 (Burns 1974) provides:

"*Duly adopted constitutions, by-laws, and other laws of labor organizations, except when and to the extent that the provisions thereof may violate public*

*policy, are hereby declared to be valid and enforceable contracts as between the members and officers of such labor organizations; and said contracts, and all rights and privileges extended thereby and therein contained, are hereby declared to be enforceable in the courts of this state,* by actions at law or in equity, brought by any individual member or members of such labor organization. Provided, however, That such member or members of such labor organization shall exhaust all rights, privileges and remedies provided by the constitution, by-laws, or other laws of said labor organization, before bringing any such action at law or in equity. [Emphasis supplied.]"

Like other contracts, therefore, either party may seek the assistance and enforcement of the courts when they perceive a breach of the agreement.

Indiana's position is in keeping with the federal view regarding the enforceability of union constitutions. The United States Supreme Court, determining the legality of union fines levied against strike breaking members, found a union constitution to be an enforceable contract between a union and its members. *NLRB v. Allis-Chalmers Mfg. Co.* (1967), 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123. Noting that this view prevailed throughout the country, the Court found that union fines were collectable under this contract theory. *Allis-Chalmers*, at 182, 87 S.Ct. at 2008, 18 L.Ed.2d at 1129. Furthermore, the Court explained the necessity of relying on the courts to enforce union fines stating: "[t]he efficacy of a contract is precisely its legal enforceability. A lawsuit is and has been the ordinary way by which performance of private money obligations is compelled." *Allis-Chalmers*, at 192, 87 S.Ct. at 2013, 18 L.Ed.2d at 1134. Clearly, Indiana's statute falls in line with general public policy regarding the enforceability of union contracts.

■ In the present case, the Union sought to enforce the provision of its constitution permitting a member to be fined

for working without proper union authorization during an approved strike. The Union sought court assistance after earlier attempts to collect the fine from Drake failed. As case precedent and Indiana law makes clear, the constitution between the Union and Drake is a valid contract which Drake breached. Accordingly, the trial court possessed the authority to enforce the Union's constitution, including the collection of the fine.

*Issue Two*

■ The courts are not permitted to independantly construe internal union rules or substitute a different interpretation of a union's constitution than that already rendered by the union. *Allis-Chalmers*, at 185, 87 S.Ct. at 2009, 18 L.Ed.2d at 1130; *Curtis v. International Alliance of Theatrical Stage Employees* (7th Cir.1982), 687 F.2d 1024, 1029; *Louisville & Nashville R.R. Co. v. Miller* (1941), 219 Ind. 389, 38 N.E.2d 239, *cert. denied*, 317 U.S. 644, 63 S.Ct. 36, 87 L.Ed. 519 (1942). There is, in fact, a presumption that the union's internal actions are just and correct. *Louisville*, at 394–95, 38 N.E.2d at 241. Consequently, a court will not interfere in a union's internal decisions unless they are unreasonable or contrary to public policy. *Id.*

■ In the context of disciplinary proceedings, national labor policy provides that:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

29 U.S.C. sec. 411(a)(5) (1982). Given the deference to unions in the administration of their internal affairs, therefore, a court will not interfere in disciplinary actions unless a member is denied his due process rights. Furthermore, a court will not interfere where a procedural rule is not correctly followed unless the complaining member

shows that this failure severely impaired his ability to prepare a defense or seriously increased the risk of an erroneous determination by the decision-maker. *Curtis*, at 1029–30.

■ In the present case, the Union provided Drake with sufficient procedural due process. Prior to trial, Drake received a copy of the charge against her, setting out the constitutional sections violated. In addition, the letter set out the rights provided to her by the constitution. Approximately one month later, Drake received notification of the date of her trial and another reminder of her procedural rights under the constitution. Further, the letter provided her with the telephone number of the chairman of the trial panel should she desire a continuance. Clearly, Drake received adequate notice of the charges against her as well as her procedural rights at the trial.

The procedure employed by the Union at the panel trial provided Drake with the opportunity to present evidence and witnesses and to cross-examine adverse witnesses. However, Drake did not avail herself of these procedures. Instead, she chose not to attend the panel trial nor did she make any attempt to contact the Union and express her hesitancy in going downtown at night. The verdict of the panel was sent to Drake along with a full explanation of the union's appeals process. Still, she did not pursue her own defense. Clearly, the union provided Drake with more than adequate procedural due process safeguards. Drake cannot now claim she was denied due process when she refused to take advantage of the opportunity given to her.

*Issue Three*

Finally, the trial court erred in refusing to enforce the fine imposed upon Drake by the Union. As noted, the constitution and by-laws of a labor organization are viewed as a contract between the organization and its members. As with other contracts, the parties may seek redress through the courts when the agreement is breached. More significantly, a court may enforce fines imposed by a union on its members.

Generally, the courts will not interfere in a union's internal disputes, provided that interested parties are protected by the safeguards of procedural due process. Here, the Union provided Drake with proper procedural safeguards which Drake chose not to use. The Union met its responsibilities to Drake and, therefore, the trial court erred in refusing to enforce the decision and fine of the Union's trial panel.

We therefore reverse and remand to the trial court to enter judgment in accordance with this opinion.

ROBERTSON, J., concurs.

NEAL, J., dissents with opinion.

NEAL, Judge, dissenting.

I respectfully dissent. It is my opinion that a public policy should exist that a person has a right to work or strike as he pleases, and he should not be subject to coercion, by fines or otherwise, to deter him from that choice. Any contract to the contrary should be declared void as violative of public policy. A willingness to work has become an increasingly scarce commodity, and should be encouraged.

I am aware that proper application was made of federal cases by the majority opinion. Nevertheless, I am wholly opposed to bringing them into state law.