Mike **EDWARDS**, Stephen Fleenor, Jennifer Glaser and Brenda Turk, Appellants–Defendants,

v.

**INDIANA STATE TEACHERS ASSOCIATION**, Appellee– Plaintiff.

No. 10A01–0008–CV–258.

Court of Appeals of Indiana.

May 30, 2001.

William F. Diehl, Gagnon & Diehl, Indianapolis, Indiana; Jeffrey L. Rhodes, (Pro Hac Vice), Springfield, VA, Attorneys for Appellants.

Richard J. Darko, Lowe, Gray, Steele & Darko, LLP, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Mike Edwards, Stephen Fleenor, Jennifer Glaser, and Brenda Turk (collectively, the Teachers) appeal the trial court's judgment in favor of the Indiana State Teachers Association (ISTA). As consolidated and restated, they contend: 1) the ISTA lacks standing to sue for unpaid dues; 2) the revocation-of-membership rule violates the First Amendment and Indiana law; and 3) the WCTA changed its revocation-of-membership procedures, making the association's constitution and by-laws inapplicable.

### FACTS

The facts most favorable to the judgment are that the Teachers were members of the West Clark Teachers Association (WCTA), the ISTA, and the National Education Association (NEA) during the school year 1997–98. The WCTA is the exclusive bargaining representative for the Teachers, representing them before the school board of the West Clark Community Schools system. In exchange for the WCTA's representation and for membership in the ISTA and NEA, each member agreed to pay on average $482.00 in annual dues. The sum was then divided among the WCTA, the ISTA, and the NEA. The ISTA received the lion's share of the dues, around 70% of the total.

To join each of the organizations, the member had only to sign a consolidated

membership form. For the school year 1997–98, atop each form was printed:

National Education Association
Indiana State Teachers Association
1997–98 Membership Form

Record at 129. The membership form also contained a blank line for the local organization—the WCTA in this case. By signing the membership form, each member agreed to the following:

I AUTHORIZE MY EMPLOYER TO DEDUCT EACH YEAR MY MEMBERSHIP DUES FOR THE UNIFIED ASSOCIATION AND/OR PAC CONTRIBUTIONS UNLESS I REVOKE THIS AUTHORIZATION IN WRITING THROUGH THE ASSOCIATION. THIS AUTHORIZATION SHALL PERMIT AND ACCEPT ANY CHANGES IN THE AMOUNT OF DUES AND/OR CONTRIBUTIONS OFFICIALLY ADOPTED BY THE RESPECTIVE GOVERNING BODIES UPON CERTIFICATION IN WRITING BY THE LOCAL ASSOCIATION. *I AGREE TO ABIDE BY THE CONSTITUTION AND BYLAWS OF EACH ORGANIZATION.*

R. at 129 (emphasis supplied). The WCTA provided these cards both to continuing members, who are members belonging to the organizations for more than a year, and new members. Edwards was a new member for the school year 1997–98, so he filled out a blank card with his statistical information and authorized a monthly payroll deduction for dues payment.

Sending the membership cards to continuing members allowed each organization to update its records. According to the membership card, a member's signature was "[r]equired only at initial enrollment or if authorizing a payroll deduction for first time." R. at 129. The three other Teachers in this suit had been members for years. As a result, the WCTA sent them membership cards with their previous statistical information already printed, leaving blank spaces for updated information. For 1997–98, Fleenor inserted his date of birth while Turk inserted her date of birth and changed her surname and phone listing. Glaser, along with Fleenor, struck the "options guaranteed" costs from their dues payment.

While no teacher is forced to join the WCTA, once a teacher does become a member such membership is automatically renewed every year. A year of membership in the WCTA runs from September 1 to August 31. A section of the WCTA's constitution entitled "Continuation of Membership" limits the period within which a member may revoke membership:

All memberships are continuing memberships and will continue in effect from year to year unless the member notifies the Association in writing that the member wishes to revoke his or her membership. *Any written revocation of membership must be filed between August 1 and August 31 of the year immediately preceding the year in which the membership is to be cancelled.*

R. at 61 (emphasis supplied). A clause reading, "The [WCTA] shall affiliate with the [ISTA] and the [NEA]," also appears in the WCTA's constitution. R. at 61.

The WCTA supplied each of the Teachers with a copy of its constitution. Furthermore, the WCTA posted copies of the constitution in each school building governed by the West Clark Community Schools system. In particular, the WCTA posted copies in the teachers lounge of the Teachers involved in this suit. Finally, at the first and last WCTA meetings of every school year, members were reminded of their continuing membership obligations and their opportunity to revoke membership during the month of August. On August 17, 1998, the WCTA held its first

meeting for the school year 1998–99. At that meeting WCTA president, David Knies, reminded the members of the August window for those who wished to revoke their membership and their obligation to do so in writing. Some members did notify the WCTA during August in writing that they were revoking their membership. But the Teachers did not.

At the beginning of the 1998–99 school year, the Teachers decided they did not want to continue their membership in the WCTA, ISTA, or NEA. At least three of the four Teachers called the payroll clerk to stop the monthly payroll deduction. None of the Teachers returned their 1998–99 membership cards. After the Teachers had failed to return their updated membership cards and had not revoked their membership in writing during the August window, Knies reminded them of their continuing membership obligations by letter. Despite the Teachers' intent not to maintain membership, they remained on the rolls of the WCTA, ISTA, and NEA, and they continued to receive membership information throughout the year. Because the Teachers remained on the rolls, the WCTA was obligated to pay the Teachers' dues to the ISTA and NEA.

On March 2, 2000, the ISTA filed small claims actions against the Teachers individually. Each claim requested $482.00 in unpaid dues plus pre-judgment interest. These claims came before a magistrate on May 9, 2000, who later submitted findings along with his judgments. The Clark Superior Court subsequently accepted the magistrate's judgments—$510.21 against each Teacher—as well as the magistrate's findings. Upon the Teachers' motion, the trial court consolidated the four individual actions for appeal. The Teachers now appeal to this court.

## DISCUSSION AND DECISION

### I. Standing

The Teachers contend that the ISTA has no standing to enforce a contract between the WCTA and the Teachers because the ISTA is not a party to the agreement. Standing is a judicial doctrine that focuses on whether the complaining party is the proper party to invoke the court's jurisdiction. *Shourek v. Stirling,* 621 N.E.2d 1107, 1109 (Ind.1993). It is designed to assure that the parties will conduct litigation actively and vigorously. *Schloss v. City of Indianapolis,* 553 N.E.2d 1204, 1206 (Ind.1990). Standing limits a court's jurisdiction by compelling the judiciary to resolve real controversies in which the complaining party has a demonstrable injury. *Id.* Therefore, the ISTA must show that it has a personal stake in the outcome of the lawsuit and must show that it has sustained, or was in the immediate danger of sustaining, some direct injury as a result of the Teachers' conduct. *See Shourek,* 621 N.E.2d at 1109.

As set forth in the *FACTS,* the membership enrollment form binds the Teachers to membership in all three organizations. The Teachers specifically contracted with the ISTA, paying the bulk of their dues—almost 70% of the total—to the ISTA. Accordingly, the association has shown that it has a personal stake in the outcome of the litigation. Moreover, the ISTA is in the immediate danger of sustaining economic injury as a result of the Teachers' failure to pay membership dues. If the Teachers do not pay their dues while enrolled in the affiliated associations, then the responsibility for their dues payment falls to the WCTA. If the WCTA is unable to pay the Teachers' portion of the dues to the ISTA, then the ISTA will receive no payment. Therefore, by contractual right and showing of immediate

danger of economic harm, the ISTA has standing to sue the Teachers.

## II. Standard of Review

■ On reviewing the judgment of a small claims court, we will not set aside the judgment " 'unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' " *City of Dunkirk Water & Sewage Dep't v. Hall,* 657 N.E.2d 115, 116 (Ind.1995) (quoting Ind. Trial Rule 52(A)). Applying this standard, we do not reweigh the evidence or determine credibility of witnesses. *Id.* Rather, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.* If a reasonable trier of fact could conclude that the elements of a party's claim were established by a preponderance of the evidence, then a judgment in favor of the party having the burden of proof will be affirmed. *Id.* "This deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.' " *Id.* (quoting Ind. Small Claims Rule 8(A)). We must also keep in mind that the Teachers are appealing from a negative judgment, and thus the trial court will be affirmed unless all evidence leads to the conclusion that the trial court's findings are clearly erroneous and against the logic and effect of the facts. *In re Estate of Banko,* 622 N.E.2d 476, 480–81 (Ind. 1993).

■ We note that the trial court entered findings of fact *sua sponte.* In *Bowman v. Kitchel,* a small claims court refused plaintiffs' request to enter findings and conclusions pursuant to T.R. 52(A). 644 N.E.2d 878, 879 (Ind.1995). Upholding the small claims court's refusal, our supreme court declared that the formal entry of findings of fact and conclusions of law was inconsistent with the small claims rules. *Id.* Applying the same principle, when a small claims court makes findings we will not subject them to T.R. 52 review. *See Flint v. Hopkins,* 720 N.E.2d 1230, 1232 (Ind.Ct.App.1999); 3 William F. Harvey, *Indiana Practice: Rules of Procedure Annotated* § 52.1, at 136 (2d ed. Supp. 2000).

## III. Voluntary Associations and Internal Governance

### A. Judicial Non–Interference

■ Our review of the trial court's judgment begins with a reprise of the law of voluntary associations, specifically, the extent to which associations may bind their members to formal, internal rules. The right of a voluntary association to adopt its own internal rules and regulations is long-standing:

> A voluntary association may, without direction and interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

*State ex rel. Givens v. Superior Court of Marion County,* 233 Ind. 235, 239, 117 N.E.2d 553, 555 (1954). These same standards apply to the internal governance of unions in Indiana. *See id.* at 554 (voluntary trade union); *Louisville & N.R. Co. v. Miller,* 219 Ind. 389, 394, 38 N.E.2d 239, 241 (1941) (voluntary railroad union).

■■ The right to adopt internal rules would be empty without the corresponding freedom to interpret them. So, " '[a]s a general rule courts will not interfere to control the administration of the constitution and by-laws of such association, or to

enforce rights springing therefrom.'" *Indiana High Sch. Athletic Ass'n v. Reyes,* 694 N.E.2d 249, 256 (Ind.1997) (alteration in original) (quoting *State ex rel. Givens,* 233 Ind. at 238, 117 N.E.2d at 555). Only cases of "fraud, other illegality, or abuse of civil or property rights having their origin elsewhere" that involve a voluntary association will justify a court's intrusion. *Id.*

■■■ Our supreme court's rule of non-interference reflects an appreciation for the "contractual" nature of membership in voluntary associations. *See id.* A member of a voluntary association "subjects himself as fully and completely to the power of the administration, within legal limits, as to the power of legislation or prescription." *Louisville & N.R. Co.,* 219 Ind. at 395, 38 N.E.2d at 241. Courts consider a voluntary association's constitution and by-laws to form a contract between an association and its members. *See, e.g., Reyes,* 694 N.E.2d at 256; *Orchard Ridge Country Club, Inc. v. Schrey,* 470 N.E.2d 780, 782 (Ind.Ct.App.1984). A corollary, long recognized, arises from the binding character of these rules: Ignorance of the by-law is no excuse. *See Supreme Lodge, Knights of Pythias of the World v. Knight,* 117 Ind. 489, 20 N.E. 479, 483 (1889) ("A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties, and his liabilities."); *Orchard Ridge,* 470 N.E.2d at 782.

We approach voluntary associations comprised of public entities the same way. In 1997, our supreme court ruled that Lafayette Jefferson High School—a member of the IHSAA—was bound to the IHSAA's internal rules and regulations. *Reyes,* 694 N.E.2d at 257 ("As to its member schools, the IHSAA is a voluntary membership association."); *but cf. Indiana High Sch. Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 230 (Ind.1997) (hold-

ing, with respect to student athletes, that membership in the IHSAA is *not* voluntary, and therefore a stricter standard of review is appropriate). In the same way, a voluntary association composed of public employees—public school teachers in this case—deserves the same judicial deference to its rulemaking authority. As long as member teachers participate in the association voluntarily, this court will view the association's constitution and by-laws as contractually binding.

## B. ISTA Is a Voluntary Association

■■■ In the instant case, the ISTA, along with the WCTA and the NEA, are voluntary associations. Though the local affiliate, the WCTA, is the "exclusive bargaining representative" for the employees of West Clark Community Schools, the association may not force any teacher to become a member or pay nonmember "fair share" fees. Teacher associations at one time could require nonmembers to pay fees inasmuch as those nonmembers were thought to receive a benefit from the association's bargaining on behalf of all teachers. A 1995 amendment to the Certificated Educational Employee Bargaining Act (CEEBA) forbade the practice:

> A school employee may not be required to join or financially support through the payment of fair share fees, representation fees, professional fees, or other fees, a [teacher association]. A rule, regulation, or contract provision requiring financial support from a school employee to a [teacher association] is void.

Act of April 26, 1995, P.L. 199–1995, 1995 Ind. Acts 3379 (codified as amended at IND. CODE ANN. § 20–7.5–1–6 (West Supp. 2000)). The Teachers do not argue, nor would the record support, that they joined the three affiliated associations *involuntarily.*

### C. The Affiliated Associations' Constitutions and By–Laws Are Contractually Binding

Correspondingly, the members of each of the affiliated associations are expected to familiarize themselves with the association's constitution and by-laws. The membership card, a consolidated form for the three affiliated associations, acknowledged the signatory's assent "TO ABIDE BY THE CONSTITUTION AND BYLAWS OF EACH ORGANIZATION." R. at 129. The WCTA's constitution, in turn, unequivocally set the terms for revoking membership:

> All memberships are continuing memberships and will continue in effect from year to year unless the member notifies the Association in writing that the member wishes to revoke his or her membership. *Any written revocation of membership must be filed between August 1 and August 31 of the year immediately preceding the year in which the membership is to be cancelled.*

R. at 61 (emphasis supplied). Each member received a copy of the constitution and by-laws. Furthermore, copies of the constitution and by-laws were posted in the teachers lounge.

Members, though presumed to be familiar with the continuing membership provision found in the WCTA constitution, were reminded of that very obligation at least twice a year. At the WCTA's first and last meetings of each year, members were told that their memberships would continue unless written revocation were filed between August 1 and August 31. As set forth in the *FACTS*, some members did file a written revocation during the August window.

### IV. Justifying Judicial Interference

■ The WCTA, the ISTA, and the NEA are voluntary associations, and the Teachers joined those groups voluntarily. Therefore, this court may review the associations' internal rules and actions only under limited circumstances: cases of "fraud, other illegality, or abuse of civil or property rights having their origin elsewhere." *See Reyes,* 694 N.E.2d at 256. The Teachers' affirmative defenses to the trial court's judgment must then fall within one of those three categories.

### A. Abuse of Civil Rights— The First Amendment

■ Though at times vague and inconsistent, the Teachers' brief does manage to present a First Amendment argument avoiding waiver under our appellate rules.[1] The Teachers at first appear to argue that a freestanding principle of voluntary unionism should guide our decision. The Teachers extract this principle from federal labor law, specifically the U.S. Supreme Court's decision in *Pattern Makers' League of North America v. NLRB,* 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985). In *Pattern Makers',* the Court held that § 8(a)(3) of the National Labor Relations Act (NLRA) protects the right of employees to resign union membership at any time without penalty. 473 U.S. at 106, 105 S.Ct. 3064 (5–4 decision). The Court reasoned that the "policy of voluntary unionism implicit in § 8(a)(3)" of the NLRA was inconsistent with restrictions on a member's right to resign. *Id.*

---

**1.** Ind. Appellate Rule 8.3(A)(7) ("The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."). For appeals initiated after January 1, 2001, Ind. Appellate Rule 46(A)(8) governs the requirements for appellate argument.

Neither the Court's holding nor reasoning in *Pattern Makers'* supports the Teachers' contention. First, the NLRA, whose interpretation and application is the central issue in *Pattern Makers'*, does not apply to this dispute. Employers[2] who are states or political subdivisions of states do not fall under the jurisdiction of the NLRA. 29 U.S.C.A. § 152(2) (West 2000); *see Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 223, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) ("The [NLRA] leaves regulation of the labor relations of state and local governments to the States."); *Kewin v. Bd. of Ed. of Melvindale N. Allen Park Pub. Schs.*, 65 Mich.App. 472, 237 N.W.2d 514, 517 n. 6 (1975) ("Michigan courts could ordinarily invoke their own exhaustion doctrines in labor disputes involving state or local governmental employees."). Second, the Court in *Pattern Makers'* explicitly limited its decision to suits involving the NLRA, remarking that "many union rules, although valid under the common law of associations, run afoul of § 8(b)(1)(A) of the [NLRA]." 473 U.S. at 113, 105 S.Ct. 3064.

Despite their reliance on *Pattern Makers'*, the Teachers do present an argument not without some merit. Their claim: The First and Fourteenth Amendments guarantee them the right to resign their membership at any time. As we have noted, "[T]he United States Supreme Court has continually condemned forced association. Indiana courts have condemned forced association too." *Fort Wayne Educ. Ass'n v. Aldrich*, 527 N.E.2d 201, 208 (Ind.Ct.App. 1988).

> "Our decisions establish with unmistakable clarity that the freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments. . . . Equally clear is an individual's right of choice not to associate himself with a particular organization or ideology."

*Id.* (omission added) (quoting *Fort Wayne Educ. Ass'n v. Goetz*, 443 N.E.2d 364, 368 (Ind.Ct.App.1982)).

Like all rights, the right of association is not absolute. Before the 1995 amendment to CEEBA, Indiana teachers associations could compel nonmembers to pay a "fair share" fee. In other words, as a condition of employment nonmember teachers could be required to pay fees to a teachers association, which served as their exclusive bargaining representative. *Goetz*, 443 N.E.2d at 368. The U.S. Supreme Court has held that requiring nonmember financial support of a teachers association does not violate the First Amendment. *Abood*, 431 U.S. at 222, 97 S.Ct. 1782. Though such an arrangement "has an impact on [nonmember] First Amendment interests," *id.*, this impact is justified by the social utility of exclusive bargaining representatives and the extent of their operating costs:

> The designation of a union as exclusive representative carries with it great responsibilities. The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. The services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, may be required.

*Id.* at 221, 97 S.Ct. 1782 (citations omitted).

The thirty-day window is similarly defensible. If the forced payment of fair

---

2. School corporations are entities "established by and under the laws of" Indiana. IND. CODE § 20–6.1–1–5. Therefore, as employees of school corporations, the Teachers are employees of a political subdivision.

share fees by *nonmembers* passes constitutional muster, then how much more the continuing membership duties of those who *voluntarily* join a teachers association. Because the teacher associations' tasks are so manifold and of great public importance,[3] they must have some way of reliably budgeting their resources. The thirty-day window allows teacher associations to forecast membership for each school year, calculate revenue, and allocate resources accordingly. If school employees could resign membership at any time, the teacher associations would lose the ability to allocate resources effectively. The resulting fiscal uncertainty would jeopardize the teacher associations' statutory mission to bargain collectively on behalf of school employees. *See* IND. CODE § 20–7.5–1–4 (listing subjects which a teacher association and school employer must bargain over); IND. CODE § 20–7.5–1–5 (listing subjects which a teacher association and a school employer must discuss).

Our analysis does not end by weighing the public importance of exclusive bargaining representatives against the slight impact on the Teachers' First Amendment rights. In *Chicago Teachers Union, Local No.1 v. Hudson,* another fee objector case, the U.S. Supreme Court added a step to its First Amendment analysis. 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The Court held that teacher associations must adopt procedures that are "carefully tailored to minimize the infringement" of nonmember First Amendment rights. *Id.* at 303, 106 S.Ct. 1066. More specifically,

the union was required to develop certain procedures allowing nonmember employees to protest expenditure of their fees for political and ideological purposes. *See id.* at 310, 106 S.Ct. 1066. In the instant case, the Teachers have a thirty-day window each year to revoke membership in an organization they voluntarily joined. We believe that this procedure is carefully tailored to minimize the limited infringement on the their First Amendment rights.

## B. Illegality

The Teachers further contend that the thirty-day window violates Indiana law, specifically I.C. § 20–7.5–1–6, which forbids forced membership and financial support of teacher associations. Forced membership or forced financial support of teacher associations would amount to an unfair labor practice. *See* IND. CODE § 20–7.5–1–7(b)(1) (prohibiting a teacher association from interfering with, restraining, or coercing a school employee in the exercise of his rights). But the Teachers here were not compelled to join the teachers associations or financially support them. Each one voluntarily joined and agreed to abide by the procedure for revoking membership.

Moreover, other courts addressing thirty-day windows, in the context of *nonmember* objections to fair share fees, have found no unfair labor practice. In *Communications Workers of America v. Beck,* the U.S. Supreme Court held that nonmember employees have no obligation "to

---

3. For the public importance of collective bargaining in the education sector, see IND. CODE § 20–7.5–1–1:

 (a) The citizens of Indiana have a fundamental interest in the development of harmonious and cooperative relationships between school corporations and their certificated employees;

 (b) Recognition by school employers of the right of school employees to organize, and

acceptance of the principle and procedure of collective bargaining between school employers and school employee organizations, can alleviate various forms of strife and unrest;

 (c) The State has a basic obligation to protect the public by attempting to prevent any material interference with the normal public school educational process[.]

support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." 487 U.S. 735, 745, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988) (construing § 8(a)(3) of the NLRA). Therefore, nonmember employees had the right to object to the use of their fair share fees for purposes unrelated to core representation. To handle these objections, some unions have established thirty-day windows within which nonmember employees must protest the union's use of their fees for that year. The Seventh Circuit has declared that such thirty-day windows do not constitute an unfair labor practice under the NLRA. *Nielsen v. Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 2569*, 94 F.3d 1107, 1116 (7th Cir.1996), *cert. denied*, 520 U.S. 1165, 117 S.Ct. 1426, 137 L.Ed.2d 536 (1997). Judge Wood reasoned:

> The costs of administration would plainly be higher if the union were required to handle objections on a rolling basis throughout the year. Furthermore, such a system would make it somewhat more difficult to create an annual budget for the non-representational activities of the union, because the revenue side of the balance book would always be in doubt.
>
> . . . .
>
> It is not unreasonable for a union to require existing members or *full fee nonmembers* to voice their objections in a timely fashion, and to be aware that the price of not doing so will be to wait at most ten or eleven months before implementing their new status. Life is full of deadlines, and we see nothing particularly onerous about this one. When people miss the deadline for filing an appeal to this Court, their rights can be lost forever, not just for eleven months, but that does not make time

limits for filing appeals in violation of the law.

*Id.* (emphasis supplied); *see also Abrams v. Communications Workers of America*, 59 F.3d 1373, 1381–82 (D.C.Cir.1995) (finding that thirty-day window period for objecting to fees was not unduly burdensome); *Andrews v. Educ. Ass'n of Cheshire*, 653 F.Supp. 1373, 1378 (D.Conn.) ("There is no room for doubt or misunderstanding as to either the requirement or the timing of an objection. The interest in a prompt resolution of such disputes is clear. The thirty-day period for objections is surely reasonable, and, indeed, ample."), *aff'd*, 829 F.2d 335 (2d Cir.1987).

If a thirty-day window is an acceptable labor practice for *nonmembers* who pay fees *involuntarily*, then the same window is sufficient for *members* who joined an association *voluntarily*. The teachers association has a clearly defined and reasonable annual window for a member to revoke membership. The WCTA relies on the thirty-day window to notify the state and national affiliates to delete continuing members from their respective lists. Furthermore, sound budget administration justifies the thirty-day window. Therefore, the thirty-day window for revoking membership is not an unfair labor practice under CEEBA.

### C. Changed Revocation Procedures

 Finally, the Teachers argue that even if the continuing membership provision is not illegal, they were not bound by it. They maintain that the WCTA "supplanted and overrode its 'continuing membership rules' by its conduct in soliciting members *every year*." Appellants' brief at 22 (emphasis in original). The evidence of record contradicts their claim.

Nonetheless, our review of this claim is circumscribed by our supreme court's command in *Reyes*. We may review the asso-

ciations' internal rules and actions only under cases of "fraud, other illegality, or abuse of civil or property rights having their origin elsewhere." *See Reyes,* 694 N.E.2d at 256. The Teachers' claim of the ISTA's purported changed practices does not fall within one of these three broad categories. For this reason, we have no authority to address it.

## CONCLUSION

In sum, the ISTA is a voluntary association who has standing to bring suit against the Teachers. The Teachers are voluntary members of the organization and agreed to abide by each organization's constitution and by-laws. The procedures for revoking membership did not violate the Teachers' First Amendment rights or CEEBA. As a result, the teachers owe dues for the school year 1998–99.

Judgment affirmed.

SHARPNACK, C.J., and MATHIAS, J., concur.