**TRUCK FINANCE SPECIALISTS, INC., Appellant–Plaintiff,**

v.

**W & S LEASING, INC., Ray Smith and Bryan Wiger, Appellees–Defendants.**

No. 32A01–0901–CV–34.

Court of Appeals of Indiana.

Aug. 10, 2009.

Michael J. Tosick, Greenfield, IN, Attorney for Appellant.

Edward W. Harris, III, Mary T. Doherty, Taft Stettinius & Hollister, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Truck Finance Specialists, Inc. ("TFS") appeals the trial court's judgment in favor of W & S Leasing, Inc. ("W & S"), Bryan Wiger, and Ray Smith. We affirm.

### Issue

The restated issue before us is whether the trial court properly concluded that the shareholders of TFS wrongly removed Wiger and Smith from TFS's board of directors, amended TFS's articles of incor-

poration, and repealed TFS's original by-laws.

### Facts

The relevant facts for purposes of this appeal are that in June 2000, Wiger and Smith entered discussions for creation of a business arrangement with Harold Scott Wade ("Scott"), Marie Wade, and Ulysses George Wade ("George"). Wiger and Smith owned Speedway International Corporation ("Speedway"), which was a new and used tractor-trailer sales, parts, and service business. It was agreed that Wiger and Smith would create a new corporation, W & S, which would lease used tractor-trailers to another new corporation, TFS. TFS in turn would then lease the vehicles to truck drivers with poor credit, who would have to make weekly lease payments to TFS.

The Wades were the sole shareholders of TFS; Wiger and Smith were the sole shareholders of W & S. TFS and W & S both were incorporated on July 7, 2000. The articles of incorporation for TFS contained only the most basic required information, such as the name of the registered agent and number of authorized shares; they contained no provisions regarding corporate governance. On July 18, 2000, the Wades executed a "Written Consent of Directors and Shareholders," which among other matters adopted bylaws for the corporation and named Scott as President of TFS. Ex. 73. It also guaranteed Smith and Wiger receipt of fifty percent of any profits, retained earnings, or bonuses from TFS.

The TFS bylaws established a board of directors consisting of three members, and named the initial three directors as Scott, Wiger, and Smith. The bylaws further provided that at least one TFS director had to also be a TFS shareholder, while at least two of the directors had to be shareholders of W & S. Additionally, there were to be annual shareholder elections of directors, but any election that violated the requirement that two of the directors also be W & S shareholders would "be null and void and of no force and effect." Ex. 3. Finally, the bylaws vested the directors, and no one else, with authority to amend the bylaws.

TFS began business operations on July 21, 2000. TFS conducted its business at Speedway's premises for several years, until September 7, 2004. On that date, Scott (without Wiger or Smith's foreknowledge) removed all of TFS's records from the premises, as well as the TFS checkbook. On September 8, 2004, Scott withdrew $45,800 from the TFS bank account, deposited that sum in his personal account, and paid himself, Marie, and George $8,800 each.

Scott also used those funds to pay a $25,000 retainer to an attorney, who filed suit on behalf of TFS in Marion County against W & S, Speedway, Wiger, and Smith on September 9, 2004. This lawsuit apparently is ongoing and seeks monetary damages for breach of fiduciary duty, breach of contract, unjust enrichment, conversion, fraud, constructive fraud, defamation of character, and tortious interference with a business relationship.

On January 22, 2005, the shareholders of TFS (e.g., the Wades) held a special shareholder meeting, at which they voted to remove Wiger and Smith as TFS directors, without cause, leaving Scott as the only remaining director. On March 25, 2005, the Wades held a second special TFS shareholders meeting. At this meeting, the Wades, pursuant to Scott's proposal as sole remaining director, voted to amend the TFS articles of incorporation as follows: (1) to allow TFS to operate without a board of directors, with the board's functions carried out instead by a chief operating officer; and (2) to allow the sharehold-

ers to amend or repeal the TFS bylaws. Accordingly, the Wades as TFS shareholders then voted to repeal the existing TFS bylaws, and named Scott as chief operating officer of TFS to perform the duties of the previous board. Thereafter, TFS filed restated articles of incorporation with the Secretary of State.

On April 20, 2005, TFS filed a declaratory judgment action in Hendricks County, which among other things effectively sought judicial validation of the January 22, 2005 and March 25, 2005 shareholder meetings.[1] On January 9, 2009, following a trial, the trial court entered judgment against TFS. It concluded that Wiger and Smith were entitled to be reinstated as TFS directors and that the original bylaws of TFS were still valid and binding. It also directed TFS to rescind the amended articles of incorporation and reinstate the original articles of incorporation. TFS now appeals.

### Analysis

■■ The parties here debate the appropriate standard of review for this case. We conclude the issues in this appeal turn on questions of law involving statutory interpretation and construction of TFS's organizational documents, which means that our review of the trial court's judgment is de novo. *See Heritage Lake Prop. Owners Ass'n, Inc. v. York,* 859 N.E.2d 763, 765 (Ind.Ct.App.2007). "The relation between a corporation and its stockholders is one of contract in which the articles of incorporation, by-laws, provisions of the stock certificate, and pertinent statutes are embodied. The rights, interests, and obligations of the stockholders arise out of such contract." *Scott v. Anderson Newspapers, Inc.,* 477 N.E.2d 553, 558 (Ind.Ct.App. 1985), *trans. denied.* Thus, "[w]hen con-

struing corporate organizational documents, the general rules of contract interpretation apply." *Heritage Lake,* 859 N.E.2d at 765. When interpreting such documents, we will read them as a whole and give effect to all words, phrases, and terms. *Id.* "As a result, the bylaws and articles of a corporation are to be read so as not to place them in conflict with each other." *Id.*

■ Additionally, when interpreting corporate documents, as with any contract, the intention of the parties is controlling. *Scott,* 477 N.E.2d at 559. "If the parties' intention is discernible from the written contract and the unambiguous terms of the contract are conclusive regarding the parties' intentions, then the court must give it effect." *Id.* Unambiguous language is conclusive upon the parties and the courts, and we must strive to effectuate the intention of the parties. *Id.*

■■ Regarding statutory interpretation, which here concerns provisions of the Indiana Business Corporation Law ("IBCL"), the words in a statute must be given their plain and ordinary meaning unless otherwise indicated by the statute. *Cubel v. Cubel,* 876 N.E.2d 1117, 1120 (Ind. 2007). We also presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

We begin by noting that TFS's originally filed articles of incorporation are silent regarding corporate governance issues. The articles contain only the most basic information regarding the corporation's name and address, registered agent, number of authorized shares, and incorporator. This is all of the information that is mini-

---

1. TFS also sought to void the July 18, 2000 "Written Consent of Shareholders and Directors" and another agreement between TFS and W & S. The trial court ruled against TFS on these issues; TFS does not challenge these particular rulings on appeal.

mally required for articles of incorporation by Indiana Code Section 23–1–21–2(a). Subsection (b) of the statute permits articles of incorporation to contain more detailed information regarding corporate governance, but subsection (c) clearly states that such information is not required.

That said, TFS's corporate governance was controlled by its bylaws. Indiana Code Section 23–1–21–6(b) states, "The bylaws of a corporation may contain any provision for managing the business and regulating the affairs of the corporation that is not inconsistent with law or the articles of incorporation." Indiana law is clear that a corporation's agreed-to bylaws may establish corporate governance rules different from those that would have applied absent those contractual provisions. *National Bd. of Exam'rs for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 617 (Ind.Ct.App.1994). On appeal, the Wades concede that they agreed to the adoption of TFS's original bylaws on July 18, 2000.[2]

Those bylaws establish that TFS shall be governed by a board of directors consisting of three members. Furthermore, the bylaws plainly and unequivocally state, three different times, "at least two (2) of the three (3) Directors shall **always** be Shareholders of W & S Leasing, Inc." Ex. 3. This provision establishing qualifications for directors does not contradict the IBCL, which provides, "The articles of incorporation or bylaws may prescribe qualifications for directors." Ind.Code § 23–1–33–2.

The Wades as shareholders wanted to keep operating TFS but without the in-volvement of Wiger and Smith. In order to accomplish this goal, the Wades needed to amend TFS's articles of incorporation to permit it to be operated without a board of directors. Specifically, Indiana Code Section 23–1–33–1(c) permits a corporation having fifty or fewer shareholders, like TFS, to dispense with a board of directors, but only if the corporation's articles of incorporation designate someone who will perform the board's duties; the Wades intended to name Scott as chief operating officer to perform those duties. The Wades also desired to repeal the original bylaws; to do so, they had to amend the articles of incorporation to permit shareholders to repeal them. Otherwise, pursuant to the IBCL, "only a corporation's board of directors may amend or repeal the corporation's bylaws." I.C. § 23–1–39–1.

Complicating the Wades's conundrum, the IBCL clearly vests authority to initiate amendments to articles of incorporation with the board of directors. Indiana Code Section 23–1–38–2 discusses situations in which the board may amend the articles without shareholder involvement, while Indiana Code Section 23–1–38–3 describes situations under which the board "may propose one (1) or more amendments to the articles of incorporation for submission to the shareholders." Indiana Code Section 23–1–38–5 permits a business's incorporators to amend the articles if the business has not yet issued any shares and a board has not yet been selected. Finally, Indiana Code Section 23–1–38–7 permits a "board of directors or, if the board of directors has not been selected, the incorporators" to restate the articles of incorporation, including amendments to the articles. The IBCL contains no provision by

---

**2.** At trial, the Wades attempted to argue that their consent to the bylaws was fraudulently obtained, or that their signatures on the written consent were forged. The trial court rejected this claim, and the Wades do not challenge this factual finding on appeal.

which shareholders may initiate an amendment of the articles without a proposal from the board.

■ Apparently, Wiger and Smith were not going to agree to any amendment to the articles of incorporation that would result in their ouster from TFS's board. Thus, in order to accomplish this goal, the Wades as shareholders voted to remove Wiger and Smith as directors, leaving Scott as the sole remaining director, who then made the necessary proposal to amend TFS's articles of incorporation to dispose of the board altogether and also to repeal TFS's original bylaws. Technically speaking, the IBCL may have permitted the Wades as shareholders to vote Wiger and Smith off the board. Indiana Code Section 23–1–33–8(a) provides, "Directors may be removed in any manner provided in the articles of incorporation. In addition, the shareholders or directors may remove one (1) or more directors with or without cause unless the articles of incorporation provide otherwise." TFS's articles of incorporation did not limit the ability of shareholders to remove any director, with or without cause.[3] Although the TFS bylaws contained a provision expressly granting the directors power to remove another director, that was not sufficient to trump the shareholders's statutory right to remove directors. Any such abrogation of that right would have had to appear in the articles of incorporation, not bylaws. *See Heritage Lake*, 859 N.E.2d at 766 (holding, under nonprofit corporation statutes that are similar to IBCL, that provision in bylaws specifying how directors could be removed by other directors did not eliminate a corporation member's statutory right to seek removal of director). Thus, the Wades could vote Wiger and Smith off the board.

■ Doing so, however, left two vacancies on the TFS board, and there were only two persons qualified to fill those vacancies: Wiger and Smith, the only two shareholders of W & S. Without even looking to any evidence extrinsic to the bylaws themselves, the unambiguous intent of the parties when they formed TFS was that Wiger and Smith, or at least two shareholders of W & S, always would be on the TFS board of directors. The Wades may now regret that arrangement, and frankly it is difficult to perceive how TFS can continue in operation with such dissension between the Wades and Wiger and Smith, but nonetheless the bylaws speak for themselves. Nothing in the articles of incorporation or the IBCL contradict the bylaws's clear provisions.

Thus, we conclude that even though the Wades as TFS shareholders had the right to vote Wiger and Smith off the board, that right was constrained by the fact that the bylaws contained valid qualification requirements for who could serve on the TFS board. That is, the clear intent of TFS's organizational documents is that Wiger and Smith (or any two W & S shareholders, if there are ever any others) must be two of the three directors of TFS. Furthermore, it is apparent that any unilateral action taken by Scott as the sole remaining director after Wiger and Smith were voted off the board runs afoul of that intent and cannot be upheld. The Wades

---

**3.** We note that the "Official Comments" to Section 23–1–33–8 seem to conflict with the language of the statute itself. The comments state in part, "a corporation that wishes to adopt the [Revised Model Business Corporation Act] rule (or similar provisions) authorizing shareholder removal of directors … must do so in its articles of incorporation." The plain language of the statute, however, unambiguously states that shareholders may remove directors, unless the articles of incorporation state differently. To the extent there is a conflict between the "Official Comments" and the statute itself, the statute controls.

were trying to inure certain corporate powers to themselves as shareholders, while the bylaws (and the IBCL) clearly invested the board of directors—including Wiger and Smith—with those powers.

TFS and the Wades argue that *Heritage Lake* requires us to hold that the bylaws's qualification provision, for practical purposes limiting the shareholders's statutory right to remove directors, violates Indiana Code Section 23-1-33-8(a) because this limitation does not appear in the articles of incorporation. We disagree. It is true that we said in *Heritage Lake*, "any provision to limit the power of members to remove directors elected by the members must be contained in the Articles" as required by statute. *Heritage Lake*, 859 N.E.2d at 766. However, we were not faced in that case, as we are in this one, with a valid provision in the bylaws plainly and expressly limiting who is qualified to serve as a director. The Wades's position amounts to an end run around the qualifications requirement in the bylaws, as well as an impermissible attempt to amend both the articles of incorporation and bylaws through means not allowed by those documents or the IBCL. *See American Osteopathic Ass'n*, 645 N.E.2d at 622 (holding "that article and bylaw provisions creating rights cannot be amended unless those rights are complied with in the amendment process.").

 On a final note, we address TFS's contention that Wiger and Smith, in fact, did not meet the qualifications to serve on the board as shareholders of W & S. Specifically, it notes that the bylaw provision that included that requirement was adopted on July 18, 2000, while Wiger and Smith apparently did not become actual shareholders of W & S until July 21, 2000. This argument is unavailing. The bylaws adopted on July 18, 2000 listed Wiger and Smith, by name, as two of the three initial directors of TFS. It was after this initial, express listing of Wiger and Smith as TFS directors that the bylaws go on to specify, with respect to future elections of directors or the filling of vacancies on the board, that two of the three directors must also be W & S shareholders. Wiger and Smith were appropriately named two of the initial directors of TFS, regardless of whether they were actual W & S shareholders on July 18, 2000; as of July 21, 2000 and up to the present day they continue to be the only two persons qualified to hold two of the three positions on the TFS board reserved for W & S shareholders.

### Conclusion

When they formed TFS, the Wades consented to Wiger and Smith essentially having permanent majority representation on TFS's board of directors, unless Wiger and Smith decided to give up such representation. The trial court correctly concluded that the Wades's attempt to remove Wiger and Smith from the board, amend the articles of incorporation to operate without a board of directors, and nullify the original bylaws were in violation of the IBCL, as well as the original articles of incorporation and bylaws. We affirm the trial court's decision reinstating Wiger and Smith to the TFS board, as well as reinstating the original bylaws, and ordering TFS to rescind its amended articles of incorporation.

Affirmed.

BAKER, C.J., and MAY, J., concur.