COMMISSIONER OF LABOR on the relation of Stephen R. SHOFSTALL, Edward C. Posey, and Deoborah N. Posey, Appellants–Plaintiffs,

v.

INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL–CIO, CLC DISTRICT COUNCIL 91, Appellee–Defendant.

No. 49A02–1107–PL–620.

Court of Appeals of Indiana.

Dec. 20, 2011.

Michael J. Cork, Bamberger Foreman Oswald & Hahn, LLP, Indianapolis, IN, Attorney for Appellant.

William R. Groth, Geoffrey S. Lohman, Fillenwarth Dennerline, Groth & Towe, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, the Commission of Labor On the Relation of Stephen R. Shofstall, Edward C. Posey, and Deborah N. Posey (collectively, Appellants), appeal the trial court's summary judgment in favor of Appellee–Defendant, International Union of Painters and Allied Trades AFL–CIO, CLC District Council 91 (the Union), finding that Appellants are not entitled to accrued vacation pay.

We reverse and remand with instructions.

### ISSUES

Appellants present two issues on appeal, which we consolidate and restate as follows:

(1) Whether the trial court erred in denying Appellants' request for summary judgment on their claim for accrued vacation pay; and

(2) Whether the trial court abused its discretion when it refused to strike portions of an affidavit.

### FACTS AND PROCEDURAL HISTORY

The Union is an intermediate labor organization with its authority spanning over twelve local unions affiliated with the International Union of Painters and Allied Trades (IUPAT) and located in the States of Indiana, Kentucky, and Tennessee. The Union employs approximately twenty business representatives and clerical employees and operates in accordance with its bylaws and the IUPAT constitution.

Stephen Shofstall (Shofstall), Edward Posey (Edward), and Deborah Posey (Deborah) were employees of the Union from its inception in August of 2001 until their termination in July of 2008. On August 4, 2004, Shofstall was appointed the Business Manager/Secretary–Treasurer, following the death of the previous Business Manager/Secretary–Treasurer. He lost the position in June of 2008, when he was defeated in an election among the Union's members by Johnny Alderman (Alderman). Edward was appointed a business representative of the Union by Shofstall. Although Edward was appointed, he served in an elected position and was defeated during the election of June of 2008. Deborah, who is married to Edward (collectively, the Poseys), was a clerical employee of the Union, working out of the Poseys' home. After his election as Business Manager/Secretary–Treasurer, Alderman terminated Deborah's employment in early July 2008. It should be noted that an elected representative of the Union, is automatically considered an employee of the Union.

The Union's practice during the Poseys' and Shofstall's employment consisted of all employees receiving two weeks of annual vacation time, which was accrued based on the length of employment. Carolyn Reis (Reis), the Union's executive secretary, created and maintained a spreadsheet tracking every employee's accrued vacation.

At the time of their termination, Shofstall and the Poseys requested to be paid for their accumulated, unclaimed vacation time. Shofstall alleged 35 days of unpaid vacation, amounting to approximately $22,079.60; the Poseys claimed that they were each owed 55 days, amounting to $14,968.80 for Deborah and $28,852.45 for Edward. Alderman denied their request. In support of his denial, Alderman relied on Sections 5.7 and 7.2 of the Union's bylaws. Section 5.7 entails "[t]he compensation of officers of the District Council" and provides, in pertinent part, as follows:

Business Manager/Secretary–Treasurer: The salary of the Business Manag-

er/Secretary–Treasurer shall be as set forth in Section 213(c) of the International Constitution based on total package, plus $40 per day per diem (five days a week, 52 weeks a year), plus reasonable expenses. He or she shall also receive two weeks paid vacation per year.

(Appellants' App. p. 152). Section 7.2 of the bylaws sets forth the compensation for elected business representatives as follows:

Compensation of elected Business Representatives will be determined by the Business Manager/Secretary–Treasurer. The salary may be more but not less than forty (40) hours pay at the highest collectively bargained hourly wage rate of pay in the District Council/Local Union's Collective Bargaining Agreement of the elected Business Representative's Local Union. Elected Business Representatives will receive two weeks paid vacation per year and reasonable expenses as determined by the Business Manager/Secretary–Treasurer.

(Appellants' App. pp. 152–53).

Upon receiving Alderman's refusal, Shofstall and the Poseys filed internal union charges protesting Alderman's decision. In accordance with the Union's bylaws and IUPAT's constitution, the case was heard by an internal trial board on January 14, 2009. The trial board found Alderman not guilty. Shofstall and the Poseys appealed to the IUPAT general executive board but were unsuccessful. They appealed to the IUPAT general convention, and were again denied their claims.

On October 21, 2009, the Poseys filed their Complaint seeking payment for accrued, unused vacation pay. On January 29, 2010, Shofstall filed a similar Complaint and both Complaints were consolidated on April 7, 2010. On February 25, 2011, Appellants filed a motion for summary judgment; three days later, on February 28, 2011, the Union filed its motion for summary judgment. Following the Union's motion for summary judgment, Appellants' filed a motion to strike certain paragraphs in the affidavit of Reis, which the Union had designated in support of its motion. On June 6, 2011, the trial court conducted a hearing on all motions. On June 29, 2011, the trial court summarily granted the Union's motion for summary judgment and denied Appellants' motion, as well as their motion to strike portions of Reis' affidavit.

Appellants now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Summary Judgment*

Appellants, former employees of the Union, contest the trial court's summary judgment in favor of the Union on their claim of payment for accrued vacation time.

### A. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct.App.2008), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the

burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that in the present case, the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

### B. *Accrual of Vacation Time*

■ Appellants contend that the trial court erred in denying their motion for summary judgment on their wage claim for accrued vacation time. Specifically, they assert that in absence of a written policy with respect to vacation pay, which is in the nature of deferred compensation and subject to the Wage Claims Act, payment of their accrued vacation time was due at termination.

It is important to note at the outset the specific parameters of this case: this dispute is between an employer, *i.e.*, the Union, and three of its former employees who had accrued vacation time prior to their termination. This case is not about a union acting as the agent for its members; the employer here just merely happens to be a union. Although the designated evidence reflects that both Shofstall and Ed-

ward were appointed to their positions, they also were elected by the Union's membership. Despite their election, the Union acknowledged them to be its employees.[1] Characterized as such, *i.e.*, the Union standing in the shoes of an employer, the issue appears to be one of first impression in Indiana.

■ Indiana Code § 22-2-5-1, sometimes referred to as the Wage Payment Statute, contains three distinct regulations: (1) employee's wages must be paid in money; (2) if requested, employers must pay employees semi-monthly or bi-weekly; and (3) employees, upon separation from employment, must be paid the amount due them at their next and usual payday (unless their whereabouts are unknown). *Ind. Heart Assoc., P.C. v. Bahamonde,* 714 N.E.2d 309, 311 (Ind.Ct.App.1999), *trans. denied.* Although the Wage Payment Statute does not define "wages," we have held that vacation pay constitutes deferred compensation in lieu of wages and is thus subject to the provisions of the statute. *Jeurissen v. Amisub, Inc.,* 554 N.E.2d 12, 13 (Ind.Ct.App.1990), *trans. denied.* Therefore, an employee is entitled to her accrued vacation pay at the time of termination "provided no agreement or published policy exist[s] to the contrary." *Ind. Heart Assoc., P.C,* 714 N.E.2d at 311 (citing *Die & Mold, Inc. v. Western,* 448 N.E.2d 44, 48 (Ind.Ct.App.1983)).

In response to Appellants' claim for accrued vacation pay, the Union refers to its bylaws as its published vacation policy. Based on the bylaws' language, the Union advances the premise that employees are only entitled to fifty-two weeks of compensation in any given year, which compensation included two weeks of vacation.

---

1. In his designated deposition, Alderman conceded that an elected representative was considered an employee of the Union; likewise, he admitted that non-elected individuals working for the Union were determined to be employees.

These two weeks have to be claimed within the calendar year in which they are accrued and cannot be carried over to the following year. In other words, the Union proposes a non-compensated use it or lose it policy with respect to accrued vacation time.

Section 5.7 of the Union's bylaws specifies the compensation of officers of the District Council and provides:

> Business Manager/Secretary–Treasurer: The salary of the Business Manager/Secretary–Treasurer shall be as set forth in Section 213(c) of the International Constitution based on total package, plus $40 per day per diem (five days a week, 52 weeks a year), plus reasonable expenses. He or she shall also receive two weeks paid vacation per year.

(Appellants' App. p. 152). Thus, pursuant to this section, as the former business manager/secretary-treasurer, Shofstall is entitled to compensation during fifty-two weeks per year and *also* two weeks of paid vacation. If we were to accept the Union's argument, the inclusion of "also" in the final sentence of the section would be irrelevant. *See Truck Finance Specialists, Inc. v. W & S Leasing, Inc.*, 911 N.E.2d 612, 615 (Ind.Ct.App.2009) (When interpreting corporate organizational documents, we will read them as a whole and give effect to all words, phrases, and terms.). Therefore, we view the two weeks of paid vacation as being in addition to the yearly compensation, not included within it.

Section 7.2 of the bylaws sets forth the compensation for elected business representatives as follows:

> Compensation of elected Business Representatives will be determined by the Business Manager/Secretary–Treasurer. The salary may be more but not less than forty (40) hours pay at the highest collectively bargained hourly wage rate of pay in the District Council/Local Union's Collective Bargaining Agreement of the elected Business Representative's Local Union. Elected Business Representatives will receive two weeks paid vacation per year and reasonable expenses as determined by the Business Manager/Secretary–Treasurer.

(Appellants' App. pp. 152–53). Pursuant to these directives, Edward, as the former business representative of the Union, is entitled to a salary calculated on not less than forty hours pay and two weeks paid vacation per year. The section is silent as to the total number of weeks encompassed by the salary, nor does it include a reference that the vacation weeks are included within the total number of compensated weeks. Furthermore, neither of the sections mentions that if the officer foregoes the allotted weeks of vacation, the individual loses them or is prevented from carrying over the accrued vacation to the following calendar year.

Moreover, both sections clearly address elected officers, not non-elected employees. Our review of the designated evidence establishes that there is no bylaw section or other written materials covering non-elected employees. As such, no written policy exists with respect to Deborah.

Our interpretation of the Union's bylaws is supported by the designated evidence. The current Business Manager/Secretary–Treasurer, Alderman, testified that the bylaws refer to 52 weeks of compensation and vacation for elected officials, but do not address employees. Discussing the Union's customs with respect to vacation pay, Alderman clarified that he has paid a previously terminated employee for vacation time that the employee "hadn't taken during the period that he was employed" by the Union. (Appellants' App. pp. 71–72). Reis, Alderman's executive assistant,

confirmed that when she was first hired, she was told that she would receive two-weeks' vacation, like any other Union employee. As part of her responsibilities, she kept track of the other employees' accrued vacations in a spreadsheet that spanned several years. Reis explained that if someone would call to ask about the amount of vacation time, she would consult her spreadsheet and tell the individual the accrued number of days. As example, she mentioned that when "Al Cunningham" enquired she "told him [that] I show 45 days remaining." (Appellants' App. p. 93). She was told to "roll[ ] days over from—vacation days that were unused from one day to the next." (Appellants' App. p. 93). Designated evidence in the record reflects that some employees, at times, took more than the allotted two weeks of yearly vacation, indicating that carrying over unused vacation days from year to year was a regular occurrence. Kevin Popa, a business representative with the Union, also confirmed that "there is nothing in writing that states an employee who works [ ] is not eligible to be paid vacation." (Appellants App. p. 130). He added that he had never heard the vacation policy described as a use it or lose it proposition. Additionally, Gary Lackey and Jerrel Miskimen, both former employees of the Union, affirmed that employees earned two weeks vacation annually and that any unused vacation was added to vacation earned in subsequent years. They confirmed that employees would not lose any vacation days upon death or termination.

 Nevertheless, the Union insists that we refrain from interpreting its by-laws and instead defer to the Union's characterization of its own internal rules. It is a well established rule that in Indiana courts exercise limited interference with the internal affairs and rules of a voluntary membership organization:

A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions or discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

*Ind. High School Athletic Ass'n, Inc. v. Reyes*, 694 N.E.2d 249, 256 (Ind.1997). In this regard, the "articles of incorporation and bylaws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves." *Lozanoski v. Sarafin*, 485 N.E.2d 669, 671 (Ind.Ct.App.1985), *reh'g denied, trans. denied.* However, some exceptions to this general rule exist and courts are allowed to intrude in cases where the interpretation at issue is unreasonable, contrary to public policy, or in the presence of fraud, other illegality or abuse of civil or property rights having their origin elsewhere. *Reyes*, 694 N.E.2d at 256; *Comm. Workers of America Local 5701 v. Drake*, 487 N.E.2d 821, 824 (Ind.Ct.App.1985).

While we do not decide today whether deference must be shown in cases where the Union acts as employer instead of as a membership organization, we note that the issue before us falls well within one of the listed exceptions. The non-payment of accrued vacation time, as proposed by the Union, when an employee is clearly entitled to payment of those days at termination, is contrary to public policy and violates the Wage Payment Statute. As such, we are allowed to intrude in the province of the Union and interpret its bylaws.

In sum, we conclude that Appellants are entitled to their accrued vacation pay. Although the bylaws grant elected officers two weeks of paid vacation, we cannot

characterize this brief mention as a settled Union vacation policy which would replace the provisions of the Wage Payment Statute and established case law. Because vacation time is considered a deferred wage and all three Appellants received two weeks' vacation per year, we find that Appellants should be awarded their accrued vacation pay. As it appeared customary for the Union to carry over the unused vacation time from year to year, we remand for a calculation of Appellants' total accrued vacation time. Therefore, we reverse the trial court's grant of summary judgment in favor of the Union and instead grant summary judgment to Appellants and remand to the trial court for further proceedings.[2]

## II. *Motion to Strike*

Next, Appellants contend that the trial court abused its discretion by denying their motion to strike portions of Reis' affidavit. Specifically, they allege that the affidavit sets forth facts that do not fall not within the personal knowledge of the affiant or upon which she is not competent to testify.

In determining a motion for summary judgment, a trial court can consider only material deemed appropriate by Ind. Trial Rule 56(E). *Duncan v. Duncan,* 764 N.E.2d 763, 766 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* Trial Rule 56(E) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously

self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The affidavit requirements of T.R. 56(E) are mandatory and a court considering a summary judgment motion should disregard inadmissible information contained in supporting or opposing affidavits. *Id.* Mere assertions in an affidavit of conclusions of law or opinions will not suffice. *City of Indianapolis v. Duffitt,* 929 N.E.2d 231, 239 (Ind.Ct.App.2010). The party offering the affidavit into evidence bears the burden of establishing its admissibility. *Id.*

The Union designated Reis' affidavit in response to Appellants' motion for summary judgment and in support of its own motion for summary judgment. In her affidavit, Reis elaborated that she was hired as a secretary in 2002 and that

> 5. I have never supervised nor do I presently supervise any other DC 91 employees. I have always directly reported to the [Business Manager/Secretary Treasurer], who tells me what to do and gives me my work assignments. I do not now exercise nor have I ever exercised any independent judgment in performing my assignments and responsibilities.

(Appellants' App. p. 193). Based on this statement, Appellants take issue with several paragraphs contained in her affidavit.

First, Appellants contest paragraph 10 which, although clearly including portions of the bylaws *verbatim,* is not directly quoted from the bylaws nor is a copy of those bylaws attached. Mindful of Reis' admission in paragraph 5 that she works

---

**2.** In its appellate brief, Appellants also request an award of mandatory liquidated damages and reasonable attorney fees pursuant to I.C. § 22–2–5–1 *et seq.* Because we award summary judgment to Appellants and remand

to the trial court for calculation of Appellants' vacation time, we find the issue of damages and attorney fees more properly left to the trial court's consideration upon remand.

under the direction of the Business Manager/Secretary Treasurer and does not exercise independent judgment, the Union failed to establish a foundation for Reis' statement in paragraph 10 of her affidavit and the paragraph should thus have been stricken by the trial court.

Next, Appellants point to paragraphs 12 to 14 of the affidavit in which Reis explains how Shofstall interpreted the Union's vacation policy. Instead of describing what Reis herself was instructed to do or did pursuant to the directions received from Shofstall, she describes Shofstall's personal interpretation of the Union's bylaws. This paragraph is not based on Reis' personal knowledge but rather amounts to Reis' speculation of how Shofstall interpreted the bylaws and thus should have been stricken from the affidavit. Likewise, the disputed paragraph 22 again describes Shofstall's actions, including the actions of several Union Trustees, and their interpretation of the IUPAT Constitution, without providing any foundation for Reis' personal knowledge.

Lastly, paragraphs 24 and 25 state

24. [The Union's] vacation policy, as set forth in its [b]y-[l]aws, has consistently been interpreted to mean that although employees and representatives may take two weeks of vacation each year, no representative or employee is ever paid for more than 52 weeks in any given vacation year. Further, no employee or representative whose employment with [the Union] was severed as a result of termination, death or retirement has ever been paid, or received, more than 52 weeks of pay. When former [business manager/secretary-treasurer] Shofstall attempted to change

that policy in December 2007, [the Union's] Trustees and the IUPAT immediately put a stop to his efforts.

25. When after their respective separations Shofstall and the Poseys were not paid for their unused days of vacation going back over several years, they filed a charge under the IUPAT's Constitution and [the Union's] [b]y[l]aws. [The Union], after affording them a full hearing, rejected their claims and the IUPAT later denied their appeal.

(Appellants' App. p. 200).

In light of Reis' concession that she works strictly under the instruction of the Business Manager/Secretary–Treasurer and does not exercise any independent judgment in the performance of her assignments, she exhibits an extensive interpretation of the Union's by-laws and the Union's internal appeal process for which she does not provide any foundation, personal knowledge, or special competency. Paragraphs 24 and 25 must be stricken.

In sum, we conclude that the contested paragraphs in Reis' affidavit are inadmissible pursuant to T.R. 56(E) and should have been stricken by the trial court. Therefore, we reverse the trial court and strike paragraphs 10, 12–14, 22, and 24–25 from Reis' affidavit.[3]

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in awarding summary judgment in favor of the Union. We reverse and enter summary judgment in favor of Appellants and remand with instruct to the trial court to calculate Appellants' vacation pay and to consider liquidated damages and attorney fees. In

3. Because Ind. Trial Rule 56(E) is considered a mandatory requirement, the Appellants are *not required to establish that they have been prejudiced by the admission of the improper* paragraphs in Reis' affidavit, as alleged by the Union. Neither is it material that the stricken paragraphs might be cumulative to information otherwise properly admitted.

addition, we conclude that the trial court abused its discretion when it refused to strike certain paragraphs in Reis' affidavit.

Reversed and remanded with instructions.

MATHIAS, J. concurs.

FRIEDLANDER, J. dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I believe the trial court was correct in all respects and therefore respectfully dissent. I will not undertake a detailed summary of what I perceive to be the fallacies in the Majority's analysis. It suffices to say that, other than on matters of boilerplate law, my views diverge significantly from those of the Majority on virtually all of the positions adopted in route to its conclusions, up to and including the conclusions themselves.

It is indeed a matter of boilerplate law that, in Indiana, employees do not have a legal right to be compensated for unused vacation time. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058 (Ind.2007). Employees are, however, entitled to vacation pay up to the time of termination if there is no policy or agreement with the employer to the contrary. *Indiana Heart Assocs., P.C. v. Bahamonde*, 714 N.E.2d 309 (Ind.Ct.App.1999). The Majority concludes that the Union's bylaws evince an intent to (1) permit employees to accrue vacation days from one year to the next, (2) regard the two weeks of paid vacation per year "as being in addition to the yearly compensation, not included within it", and (3) confer upon employees a right to be paid for unused vacation time upon separation of employment. *Op.* at 129. These conclusions derive primarily from the interpretation of Sections 5.7 and 7.2 of the Union's bylaws.

Section 7.2 provides that compensation for elected representatives will be determined by the business manager/secretary-treasurer and will include two weeks of paid vacation per year. Section 5.7, pertaining to the business manager/secretary-treasurer, provides that employees were entitled to receive a salary "during fifty-two weeks per year", and that "[h]e or she shall also receive two weeks paid vacation per year." *Appellant's Appendix* at 8. The Majority notes that the bylaws do not state that an employee is *not* entitled to pay for unused vacation time upon separation and thereby concludes that they *are* so entitled. In addition, the Majority deems the use of the word "also" in Section 5.7 as conclusively establishing that the vacation is to be regarded as in addition to the fifty-two weeks of salary. Finally, the Majority concludes that the bylaws are silent as to non-elected union employees and therefore that Deborah Posey's compensation in these matters is not addressed by the bylaws. I reach different conclusions as to each.

On the matter of Shofstall's and Ed Posey's claims, Sections 5.7 and 7.2, read in conjunction with each other, clearly provide that they are entitled to fifty-two weeks worth of pay and two weeks of paid vacation. Johnny Alderman, who replaced Shofstall as DC 91's principal officer, interpreted that to mean that in a given employment year, the relevant individuals were entitled to be paid for fifty-two weeks at the appropriate weekly rate, and that they could take as much as two weeks of vacation during those fifty-two weeks and still receive their customary pay. When Shofstall and the Poseys appealed that determination to the DC 91 trial board and then the IUPAT pursuant to procedures set out in the IUPAT constitution, those decision-makers affirmed Alderman's interpretation and denied the appellants'

claims. Indeed, Alderman's interpretation, as affirmed by the relevant IUPAT and union reviewing bodies, seems to me to be the most logical one. In union matters such as this, this court has long observed a policy of judicial non-interference. This policy has been applied specifically in the area of the interpretation of union bylaws. We have explained it thus:

> The right of a voluntary association to adopt its own internal rules and regulations is longstanding:
>
>> A voluntary association may, without direction and interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.
>
> *State ex rel. Givens v. Superior Court of Marion County*, 233 Ind. 235, 239, 117 N.E.2d 553, 555 (1954). These same standards apply to the internal governance of unions in Indiana. *See id.* at 554 (voluntary trade union); *Louisville & N.R. Co. v. Miller*, 219 Ind. 389, 394, 38 N.E.2d 239, 241 (1941) (voluntary railroad union).
>
> The right to adopt internal rules would be empty without the corresponding freedom to interpret them. So, " '[a]s a general rule courts will not interfere to control the administration of the constitution and bylaws of such association, or to enforce rights springing therefrom.' " *Indiana High Sch. Athletic Ass'n v. Reyes*, 694 N.E.2d 249, 256 (Ind.1997) (alteration in original) (quoting *State ex rel. Givens*, 233 Ind. at 238, 117 N.E.2d at 555). Only cases of "fraud, other illegality, or abuse of civil or property rights having their origin elsewhere" that involve a voluntary association will justify a court's intrusion. *Id.*

*Edwards v. Indiana State Teachers Ass'n*, 749 N.E.2d 1220, 1225–26 (Ind.Ct.App. 2001).

Alderman's interpretation of the IUPAT constitution and union bylaws, affirmed by the DC 91 trial board and the IUPAT, may not fairly be characterized as constituting fraud or an abuse of civil or property rights, or involving some form of illegality. Neither does it contravene public policy, as the Majority holds. In fact, I find it eminently reasonable. It is the way most people would interpret a provision setting out a yearly salary and providing for a two-week, paid vacation. The term "also" surely cannot work such mischief as to stand the plain meaning of the relevant bylaws on its head.

As for Deborah Posey, I agree with the Union that there is no merit to the claim that the bylaws created, or at least recognized, a distinction between the Union's elected officials and its employees. Simply put, she was subject to the bylaws' employment provisions, just as Shofstall and Ed Posey were.

I would affirm the trial court in all respects.